J-S79043-14

2015 PA Super 22

| | | |
|---|---|---|
| ESTATE OF ROBERT H. AGNEW, MARGARET ALZAMORA, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF ROBERT H. AGNEW, WILLIAM AND SHEILA HENNESSY, H/W, MARGARET HENNESSY, JAMES AND CHRISTINE HENNESSY, H/W AND PAUL AND EILEEN JANKE, H/W, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : | |
| v. | : | |
| DANIEL R. ROSS, ESQUIRE, MEGAN MCCREA, ESQUIRE AND ROSS & MCCREA, LLP, | : | |
| Appellees | : | No. 2195 EDA 2014 |

Appeal from the Order Entered June 4, 2014,
in the Court of Common Pleas of Chester County,
Civil Division, at No(s): 12-09300

BEFORE:    ALLEN, OLSON, and STRASSBURGER, JJ.*

OPINION BY: STRASSBURGER, J.:                **FILED FEBRUARY 02, 2015**

The Estate of Robert H. Agnew, Margaret Alzamora, individually and as executrix of the Estate of Robert H. Agnew, William and Sheila Hennessy, Margaret Hennessy, James and Christine Hennessy, and Paul and Eileen Janke (collectively, Appellants) appeal from the order granting summary judgment against them and in favor of Daniel H. Ross, Esquire, Megan McCrea, Esquire, and their firm, Ross & McCrea, LLP (collectively, Appellees). Upon review, we reverse the order of the trial court and remand for proceedings consistent with this opinion.

*Retired Senior Judge assigned to the Superior Court.

The trial court summarized the underlying facts as follows.

[I]n November of 2003, Robert H. Agnew retained Ross to draft estate planning documents. Ross drafted a Revocable Trust and Will in order to effectuate Mr. Agnew's intent. Over the next several years, Ross prepared various amendments to the Trust and the Will, as requested by Mr. Agnew.

As of 2010, Mr. Agnew's estate plan was comprised of specific gifts of cash and property to selected family members, friends and five $250,000 scholarship funds to four different colleges. The beneficiaries of the residue of the trust were several colleges.

In March of 2010, Mr. Agnew suffered a fall at his residence and was taken to Paoli Hospital. He underwent a variety of tests which included a CAT scan, where it was revealed he was suffering from an inoperable cancerous tumor. Based upon Mr. Agnew's age and condition, he was advised that he was not a viable candidate for chemotherapy and there was nothing further that could be done. In March of 2010, Mr. Agnew returned to Devon Senior Living and was admitted into a hospice program.

In the summer of 2010,…Margaret Alzamora, [Mr. Agnew's niece,] contacted Ross to tell him that Mr. Agnew wanted to make changes to his estate plan. Mr. Agnew retained Ross and they met at his residence on August 18, 2010. The purpose of this was to discuss amendments to various documents and to establish a trust relating to property owned by [Mr. Agnew] in Florida (hereinafter "Florida Trust"). While Ms. Alzamora participated in a portion of the meeting, she was not present at the meeting when Mr. Agnew discussed his estate plan with Ross.

Ross acknowledged that Mr. Agnew advised that he wanted to make changes to his estate plan to limit the amounts going to charity[1] and provide more funds to go to his [nieces

---

[1] The charities involved in the trust were Drexel University, Chestnut Hill College, Temple University, and Muhlenberg College. The Estate paid a

and nephews]. Mr. Agnew advised Ross that Ms. Alzamora would provide further details.

Later in August of 2010, Ms. Alzamora contacted Ross by email and communicated details of these additional instructions. The email indicated that the residue should be divided into five equal shares [among] … William and Sheila Hennessy, James and Christine Hennessy, Eileen and Paul Janke, Margaret Hennessy[,] and Margaret Alzamora[, all of whom are Mr. Agnew's nieces and nephews].

Ross prepared a draft of an Amendment to the Trust (hereinafter "2010 Trust Amendment") which continued to provide for gifts in the amount of $250,000 to each of the colleges and universities and a revised Will for Mr. Agnew. Of note, the drafted 2010 Trust Amendment did provide that the residue of the assets of the Revocable Trust were to be distributed equally to [Appellants] in this action.

The revised Will and the 2010 Trust Amendment, which Ross prepared, were sent by email on August 27, 2010 to Ms. Alzamora for the purpose of providing them to Mr. Agnew. Ms. Alzamora did provide Mr. Agnew with copies of the revised Will and the Trust Amendment. Mr. Agnew reviewed the documents. However, Mr. Agnew did not execute the revised Will or the 2010 Trust Amendment.

In September of 2010, Ross met again with Mr. Agnew. Following a discussion between Ross and Mr. Agnew, the revised Will and an amendment to the Florida Trust were executed. Importantly, the 2010 Trust Amendment was not executed.

Ross did not speak with Mr. Agnew about the 2010 Revocable Trust Amendment in part because they [did not] have copies with them. However, it was clear and Ms. Alzamora acknowledged that Mr. Agnew was aware that the 2010 Trust Amendment had been prepared. Mr. Agnew had the document presented and described to him. Ms. Alzamora acknowledged that Mr. Agnew would have known that the 2010 Trust

---

portion of each bequest to each charity in order to settle the dispute as to those entities.

Amendment was not among the documents executed at the September 2, 2010 meeting.

After the September 2, 2010 meeting, Mr. Agnew never mentioned the 2010 Trust Amendment again. Ross retained all of the documents that had been executed and stored them in the firm's will vault. Mr. Agnew died January 15, 2011.

On February 1, 2011, Letters Testamentary were granted to Margaret Alzamora and the September 2, 2010 Will was admitted to probate as the Last will of [Mr. Agnew]. Sometime between the probate of [Mr. Agnew's] Will and February 10, 2011, Ross realized that the 2010 Trust Amendment was never executed and advised Ms. Alzamora. Ms. Alzamora noted that she had never seen a signed copy version of the 2010 Trust Amendment and there is no evidence it was ever signed.

Trial Court Opinion, 6/4/2014, at 2-4 (footnote added).

On August 31, 2012, Appellants commenced this action against Appellees by writ of summons. On October 19, 2012, Appellants filed a complaint. In Count I, Appellants asserted a claim sounding in breach of contract against Ross and McCrea. In Count II, Appellants asserted a cause of action in negligence against Ross and McCrea. In Count III, Appellants asserted a claim called "*Respondeat Superior*" against the law firm, Ross & McCrea, LLP. Complaint, 10/19/2012, at 16.

Appellees filed preliminary objections to the complaint, which were sustained in part and overruled in part on May 23, 2013. Specifically, the trial court sustained the preliminary objection asserting that the Estate of Robert Agnew was an improper party to this suit, thereby dismissing the estate as a party. The trial court also concluded that claims by Margaret

Alzamora in her capacity as executrix of the estate should be dismissed. The trial court further concluded that because "the individual [Appellants] did not have an attorney-client relationship with [Appellees], their claim[s] for negligence in Count II and *respondeat superior* in Count III are dismissed." Trial Court Order, 5/2/2013, at n.1. Finally, the trial court concluded that "[i]t is not certain that [Appellants] cannot establish that they were intended third-party beneficiaries of the contract between [Ross] and [Mr. Agnew] to amend the Revocable Trust." **Id**. Thus, the claim for breach of contract survived demurrer.

After pleadings were closed and discovery was conducted, Appellees moved for summary judgment. Following oral argument, summary judgment was granted in favor of Appellees and against Appellants. Appellants timely filed a notice of appeal from the order granting summary judgment.[2] On appeal, Appellants set forth four issues for our review.

---

[2] In response to the trial court's direction to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925, Appellants filed a statement consisting of "seven pages with four errors delineated as headings; however, each error ha[d] several subparagraphs, totaling 46 in all. In addition to the errors complained of on appeal, Appellant[s] attached in excess of 50 pages of exhibits." Trial Court Opinion, 8/18/2014, at 1. We agree with the trial court's assessment that "Appellant[s'] Concise Statement was anything but[;]" and runs perilously close to permitting us to conclude Appellants have waived all issues. **See Kanter v. Epstein**, 866 A.2d 394 (Pa. Super. 2004) (holding no issues preserved for review where appellant's "concise" statement spanned 15 pages and 49 issues). However, because Appellants have raised the same issues on appeal that the trial court

A. Whether the [t]rial [c]ourt erred in holding that a signed testamentary document is a prerequisite to standing in every legal malpractice action based on third-party beneficiary status.

B. Whether the [t]rial [c]ourt abused its discretion in failing to recognize Appellants' status as third-party beneficiaries of the contract for legal services between [Mr. Agnew] and Appellees?

C. Whether the [t]rial [c]ourt erred as a matter of law in relying on **Gregg v. Lindsay**[, 649 A.2d 935 (Pa. Super. 1994)]?

D. Whether the [t]rial [c]ourt failed to view the evidence in the light most favorable to Appellants?

Appellants' Brief at 4 (footnotes omitted).

Because Appellants' issues are interrelated, we consider them together.

Our standard of review of a trial court's order granting summary judgment is well-established: We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of the trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion. [A]n abuse of discretion occurs when the court has overridden or misapplied the law, when its judgment is manifestly unreasonable, or when there is insufficient evidence of record to support the court's findings.

---

addressed in its June 4, 2014 opinion granting summary judgment, we will proceed to the merits of this case.

- 6 -

***Young v. Prizm Asset Mgmt. Co.***, 100 A.3d 594, 596 (Pa. Super. 2014) (internal citations and quotations omitted).

Instantly, the only claim considered on summary judgment was Appellants' contention that Ross had breached his contract with Mr. Agnew.[3] Because Mr. Agnew was deceased and could not sue Ross, Appellants contended they had standing to pursue this suit under the theory that they were third-party beneficiaries of the contract between Ross and Mr. Agnew.

In ***Guy v. Liederbach***, 459 A.2d 744 (Pa. 1983) (plurality),[4] our Supreme Court adopted the Restatement (Second) of Contracts § 302 with respect to third-party beneficiaries in situations analogous to the one at issue here.[5]

---

[3] This Court has explained:

> [A]n assumpsit claim based on breach of an attorney-client agreement is a contract claim, and the attorney's liability must be assessed under the terms of the contract. Thus, if the attorney agrees to provide his or her best efforts and fails to do so, an action in assumpsit will accrue. [A]n attorney who agrees for a fee to represent a client is by implication agreeing to provide that client with professional services consistent with those expected of the profession at large.

 ***Fiorentino v. Rapoport***, 693 A.2d 208, 212-13 (Pa. Super. 1997) (quotations and citations omitted).

[4] The majority of justices joined the opinion on the aspects of ***Guy*** pertinent to this case.

[5] In ***Guy***, ***supra***, the executrix of the estate, who was also a named beneficiary in the will, brought a breach of contract and legal malpractice

We believe that Restatement (Second) of Contracts § 302 (1979) provides an analysis of third party beneficiaries which permits a properly restricted cause of action for beneficiaries such as appellee.…

Restatement (Second) of Contracts § 302 (1979) states:

§ 302. Intended and Incidental Beneficiaries

(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties *and either*

>        (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

>        (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

>    (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

(Emphasis added). There is thus a two part test for determining whether one is an intended third party beneficiary: (1) the recognition of the beneficiary's right must be "appropriate to effectuate the intention of the parties," and (2) the performance

---

action against the attorney who prepared the will. That attorney had permitted the executrix to be a witness to the will which, under a now repealed New Jersey statute providing that a will signed by an interested witness is invalid, voided her entire legacy and her appointment as executrix. Our Supreme Court concluded that the executrix could not bring an action for legal malpractice as there was no strict privity between the executrix and the attorney. As discussed, *infra*, the Supreme Court concluded that the executrix could maintain a breach of contract action with standing as a third-party beneficiary to the contract between the attorney and the decedent.

must "satisfy an obligation of the promisee to pay money to the beneficiary" or "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." The first part of the test sets forth a standing requirement. For any suit to be brought, the right to performance must be "appropriate to effectuate the intentions of the parties." This general condition restricts the application of the second part of the test, which defines the intended beneficiary as either a creditor beneficiary (§ 302(1)(a)) or a donee beneficiary (§ 302(1)(b)), though these terms are not themselves used by Restatement (Second). Section 302(2) defines all beneficiaries who are not intentional [*sic*] beneficiaries as incidental beneficiaries. The standing requirement leaves discretion with the trial court to determine whether recognition of third party beneficiary status would be "appropriate." If the two steps of the test are met, the beneficiary is an intended beneficiary "unless otherwise agreed between promisor and promisee."

Applying these general considerations and Restatement (Second) § 302 to the case of beneficiaries under a will, the following analysis emerges. The underlying contract is that between the testator and the attorney for the drafting of a will. The will, providing for one or more named beneficiaries, clearly manifests the intent of the testator to benefit the legatee. Under Restatement (Second) § 302(1), the recognition of the "right to performance in the beneficiary" would be "appropriate to effectuate the intention of the parties" since the estate either cannot or will not bring suit. Since only named beneficiaries can bring suit, they meet the first step standing requirement of § 302.[8]

[8] There are, of course, beneficiaries under a will who are not named, and who may be either intended or unintended beneficiaries. The standing requirement may or may not be met by non-named beneficiaries: the trial court must determine whether it would be "appropriate" and whether circumstances indicate an intent to benefit non-named beneficiaries. It follows that unintended third party beneficiaries could not bring suit under § 302 against the drafting attorney. In making that determination

the trial court should be certain that the intent is clear.

Being named beneficiaries of the will, the legatees are intended, rather than incidental, beneficiaries who would be § 302(1)(b) beneficiaries for whom "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." In the case of a testator-attorney contract, the attorney is the promisor, promising to draft a will which carries out the testator's intention to benefit the legatees. The testator is the promisee, who intends that the named beneficiaries have the benefit of the attorney's promised performance. The circumstances which clearly indicate the testator's intent to benefit a named legatee are his arrangements with the attorney and the text of his will.

**Guy**, 459 A.2d at 751-52.

Thus, in footnote 8 of **Guy**, the Supreme Court left open the possibility that beneficiaries not named in a will could have standing to pursue a breach of contract action against an attorney.  Subsequently, in **Gregg v. Lindsay**, 649 A.2d 935, 938 (Pa. Super. 1994),[6] this Court considered whether **Guy** "should be expanded to allow recovery where…(1) the new will was never executed by the testator, and (2) the facts send a mixed signal regarding the person to whom the lawyer owed a primary duty of loyalty."

---

[6] **Gregg**, **supra**, was a three-judge panel decision of this Court with one judge writing for the majority and two judges concurring in the result. "Unless an issue in a panel decision commands a majority **both as to result and as to rationale**, the principle embodied in the issue is not precedential." **Commonwealth v. Perez**, 760 A.2d 873, 880 (Pa. Super. 2000) (emphasis added).  As such, the rationale in **Gregg** is non-precedential because it did not garner a majority vote on the panel.

In **Gregg**, the would-be legatee, Gregg, contacted an attorney, Lindsay, to prepare a will on behalf of his long-time friend, Blain, who was in intensive care at a hospital. The will named Gregg executor and provided a substantial bequest to him. Lindsay went to the hospital with a draft of the will, which Blain approved; however, Lindsay was unable to find two persons to witness the will. Lindsay returned at noon the following day so Blain could execute the will; however, Blain had been transferred to another hospital and died later that afternoon.

Gregg filed a breach of contract action against Lindsay asserting standing on the basis that Gregg was a third-party beneficiary to the contract between Blain and Lindsay. A jury returned a verdict in favor of Gregg, and Lindsay appealed. This Court reversed the verdict and held that "there was no breach of contract between [Blain] and [Lindsay]." **Id**. at 939-40. This Court reasoned as follows.

> In **Guy v. Liederbach**, **supra**, the Supreme Court found that the executed will had firmly evidenced the existence of the third party beneficiary contract intended to benefit the legatee. Here, however, there was no executed will which, under such an analysis, could clearly establish an intent by the testator to benefit the third person. Where one seeks to prove the existence of an oral contract for the making of a will, he assumes an exacting evidentiary burden which requires clear, direct and precise evidence of each of the elements to a valid contract. … [T]here is no competent evidence of that which transpired between Lindsay and Blain at the hospital sufficient to permit a finding that they had entered a contract to make a will at that time.

- 11 -

> To hold otherwise, under the circumstances of this case, would open the doors to mischief of the worst type. To permit a third person to call a lawyer and dictate the terms of a will to be drafted for a hospitalized client to benefit the third person caller, even though the will was never executed, would severely undermine the duty of loyalty owed by a lawyer to the client and would encourage fraudulent claims.

*Id*. at 940.

In the instant case, the trial court applied the aforementioned law and concluded the following.

> A review of the probated 2010 Will does not list any of the [Appellants] as beneficiaries…. The issue is whether there is any executed document which indicates that [Appellants] were intended as beneficiaries.
>
> In reviewing *Guy* and its progeny, it is clear that in order to maintain the action under the theory of a third-party beneficiary, [Appellants] would need to show that there is an "otherwise valid" document naming them as recipients of all or part of the estate. In other words, the beneficiary's right must be shown and established by the showing of some otherwise valid document that effectuates the intention of the parties.

Trial Court Opinion, 6/4/2014, at 8.

Thus, the trial court's reading of non-precedential *Gregg* essentially obliterates footnote 8 of *Guy* by requiring that being named in an "otherwise valid" document is a prerequisite to obtaining standing as a third-party beneficiary to a contract. In support of its conclusion, the trial court relied on language in *Gregg*, which provided the following analysis of *Guy*.

> In [*Guy*], the Supreme Court specifically retained the "requirement that [a] plaintiff must show an attorney-client relationship or a specific undertaking by the attorney furnishing

- 12 -

professional services, … as a necessary prerequisite for maintaining [an action] in trespass on a theory of negligence." What the Court took away with one hand, however, it gave back, in part, with the other. **Thus, it created a right of recovery on the theory of a third party beneficiary to a contract in a narrow class of cases in which it was clear that an innocent party had been injured by legal malpractice in the execution of an otherwise valid will.**

*Gregg*, 649 A.2d at 937 (emphasis added; citations omitted).

Appellants contend the circumstances of this case differ from those in *Gregg*; and, footnote 8 of *Guy* still leaves open the possibility that a beneficiary who is not named may still have standing to bring suit.[7] Specifically, footnote 8 of *Guy* provides that where non-named beneficiaries bring suit, "the trial court must determine whether it would be 'appropriate' and whether circumstances indicate an intent to benefit non-named beneficiaries." 459 A.2d at n.8. Essentially, Appellants suggest that while the naming of a beneficiary in a will or contract provides a clear manifestation of intent, and would preclude summary judgment, the failure to name the beneficiary does not automatically require the entry of summary judgment if the beneficiary can satisfy the test set forth in section 302.

We agree with Appellants that footnote 8 of *Guy* is still good law, and conclude the trial court erred in its reading of *Gregg* to eliminate footnote 8

---

[7] These individuals were all named beneficiaries in the will executed by Mr. Agnew, but they were not named in the trust prior to the unsigned 2010 Trust Amendment at issue here.

of **Guy**. Having concluded that the trial court erred as a matter of law, we continue our analysis to determine whether the trial court erred in granting summary judgment. Instantly, the trial court concluded that "[t]here is no competent evidence of that which transpired at the September meeting between Mr. Agnew and Ross." Trial Court Opinion, 6/4/2014, at 9. We disagree, and examine the facts of this case in the light most favorable to Appellants.

There is no question that Ross was Mr. Agnew's attorney for the seven years prior to the 2010 Trust Amendment.[8] Moreover, Ross' testimony reveals that he believes he made a mistake by not presenting the 2010 Trust Amendment for Mr. Agnew's signature at the September 2, 2010 meeting. **See** Deposition of Ross, 10/3/2013, at 25 ("I had met with Mr. Agnew in August of 2010, at which time he indicated that he wanted to make changes to his estate plan, to have more go to his wife's family. He was unclear at that point how he wanted to accomplish that. And he said he would get back to me through Ms. Alzamora."). Ross further testified that when he drafted the 2010 Trust Amendment with the names of Appellants, he believed that it was consistent with Mr. Agnew's wishes. **Id**. at 27. Ross

---

[8] This is quite distinguishable from **Gregg**, where Lindsay had never before met either Blain or Gregg prior to the drafting of the will. Moreover, Gregg called Lindsay and requested the change of will to benefit himself while Blain was on his deathbed. These are circumstances which would alert any reasonable person to suspect that fraud could be invovled.

also stated that Mr. Agnew "would have signed the amendment had I prepared it, but because it was not with me, it was not discussed and until I discussed it with him I can't say for certain he would have signed it." *Id*. at 30. Moreover, Ross conceded that his failure to bring the 2010 Trust Amendment to that meeting was an "[o]versight." *Id*.

Thus, the trial court erred in concluding that the "recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties" did not exist in order to satisfy the standing requirement of the Restatement (Second) of Contracts § 302. Examining the facts in the light most favorable to Appellants, the record supports an inference that Ross intended to give Appellants the benefit of his contract with Mr. Agnew. As such, Appellants have satisfied the standing requirement. Therefore, we reverse the order of the trial court granting summary judgment in favor of Appellees.

Order reversed. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: <u>2/2/2015</u>