J-A18006-18

2018 PA Super 358

| THE ESTATE OF PHILIP F. YOUNG AND BRINTON YOUNG, INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF PHILIP F. YOUNG, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| ROBERT LOUIS, ESQUIRE AND SAUL EWING LLP | |
| Appellee | No. 2898 EDA 2017 |

Appeal from the Order Dated August 2, 2017
In the Court of Common Pleas of Philadelphia County
Civil Division at No.: June Term 2015 No. 01733

BEFORE:  STABILE, J., STEVENS, P.J.E.*, and STRASSBURGER, J.**

OPINION BY STABILE, J.:                    **FILED DECEMBER 31, 2018**

Appellant Brinton Young, both individually and as personal representative of the Estate of Philip F. Young, appeals from an order granting summary judgment in this legal malpractice action in favor of Appellees Robert Louis, Esquire, and Saul Ewing LLP.  Appellant argues that Appellees' negligent preparation of estate documents prevented him from receiving all assets that Philip Young intended him to receive from Philip's trust.  We affirm.

The trial court accurately summarized the factual and procedural history as follows:

---

* Former Justice specially assigned to the Superior Court.
** Retired Senior Judge assigned to the Superior Court.

The material facts of this case are undisputed. There are three purported testamentary instruments at issue: Philip F. Young's executed 1951 revocable deed of trust ("the Trust" and "the Trust instrument"), his executed 2006 will ("the Will"), and an unexecuted 2007 Trust amendment ("Draft Amendment").

On January 30, 1951, Philip executed a revocable deed of trust designed to hold and manage his extensive portfolio of Pennsylvania coal lands, to manage the income and profits those lands generated, and to distribute those assets at the time of Philip's death. The Trust instrument states in relevant part:

> Settlor reserves the right to revoke or amend this trust in whole or in part at any time and from time to time by written instrument delivered to Trustee in the lifetime of Settlor. Trustee shall deliver to Settlor absolutely and free of trust any assets withdrawn by revocation . . . Upon the death of Settlor Trustee shall grant and convey, divide, assign, transfer, and pay over the principal held hereunder to and among the persons who would then be entitled to receive the same under the intestate laws of the Commonwealth of Pennsylvania then in effect if Settlor had then died intestate seised and possessed of the same . . . .

It is undisputed that, other than a 1951 amendment empowering the trustee to appoint an attorney-in-fact to manage certain assets, Philip never executed any amendments to the Trust. Philip never married or had any known children during his lifetime. Philip's nephew and niece Brinton and Carolina Young were born after the execution of the Trust instrument. At the time of Philip's death, the Trust held approximately 90% of his assets.

On October 13, 2006, Philip executed his sole Will that had been drawn up on his behalf by Ewing attorneys. The Will contains three provisions relevant to our purposes: first, bequeathing Philip's tangible personal property to Brinton; second, bequeathing the historic family homestead Windy Hill to Brinton "with the hope that he preserves it;" and third, bequeathing any and all residue of Philip's estate to Brinton and/or to Brinton's issue, per stirpes. Brinton is the sole named beneficiary of the Will.

The parties in this case agree that Ewing attorneys drew up the Draft Amendment to the Trust at some point prior to their meeting

with Philip on February 7, 2007. The Amendment would have removed the Trust beneficiary class and instituted Brinton as the sole beneficiary. For whatever reason, Philip never signed or executed this Amendment.

Philip died on June 17, 2013. Since the Draft Amendment was never executed, the 1951 Trust terms still controlled, so the Trust assets were equally distributed among all would-be intestate heirs. The only two qualifying individuals were Brinton and Caroline, so each received half: $3,149,406.50 each. This represented the vast majority of Philip's assets.

As stated above, the Will named Brinton Philip's sole heir and appointed him executor of the estate. Under the Will, Brinton received Philip's personal assets, his residue, and the real property Windy Hill. As to Windy Hill, the Will stated, "I give our family homestead known as Windy Hill to my nephew BRINTON YOUNG, with the hope that he preserves it." The Will does not include any bequests to Caroline.

Brinton believes that Philip's true testamentary intent was to leave all his assets under the Will and Trust to Brinton, so that Brinton could maintain and preserve Windy Hill. However, Brinton alleges, the Will assets are woefully insufficient to cover the costs of preservation work. Brinton argues that Philip had not realized the Trust controlled most of his assets when he executed the Will; had Philip's attorneys advised him of this, Philip allegedly would have amended the Trust instrument so that Brinton would receive both the property and all Philip's money. Brinton therefore argues that Ewing attorneys caused the frustration of Philip's testamentary intent when they failed to ensure that he executed the Draft Amendment.

For these reasons, Brinton sued Ewing, raising breach of contract and legal malpractice claims both as an individual and as executor of Philip's estate.

On May 1, 2017, Ewing moved for summary judgment, arguing that (1) Brinton lacked standing to sue individually as a third-party beneficiary of the legal services contract between Philip and Ewing; (2) Brinton has no standing to sue individually for legal malpractice; (3) Philip's estate does not have standing to sue on the basis of an asset it no longer owns; (4) there is no basis for recovery on behalf of the estate because it did not suffer any

cognizable harm; and (5) an estate-planning attorney is not required to ensure that the existence of the client's testamentary assets when drafting a testamentary instrument. Brinton responded that he had standing to sue Ewing as a third-party beneficiary of the legal services contract between Ewing and Philip, because the Will clearly evidences Philip's intent to make Brinton a named Trust beneficiary. Furthermore, he argued that the estate suffered harm because Philip's testamentary wishes were not fulfilled.

On August 2, 2017, this [c]ourt issued an Order granting summary judgment in favor of Ewing. The Order included an explanatory footnote regarding the hotly-contested interpretation of the recent Supreme Court case[,] **Agnew v. Ross**, 152 A.3d 247 (Pa. 2017) (analyzing third-party beneficiary standing of would-be devisees to sue for breach of legal services contract) and stating that it found, under **Agnew**, that Brinton lacked individual standing to sue for breach of contract and legal malpractice. It furthermore stated that his remaining claims (on behalf of Philip's estate) failed for lack of damages. On August 14, 2017, Brinton moved for reconsideration. On August 28, 2017, this [c]ourt denied the reconsideration motion. This timely appeal followed.

Pa.R.A.P. 1925 Opinion, at 1-5.

Appellant raises the following issues in this appeal:

1. Did the trial court err as a matter of law in granting summary judgment where Pennsylvania law accords standing in malpractice actions to named legatees whose legacies fail due to attorney negligence?

2. Did the trial court err as a matter of law in granting summary judgment where Brinton is specifically named in Philip's will, and where the circumstances demonstrate that Philip intended to leave Brinton "everything," including the assets contained in his trust, for the purpose of maintaining his ancestral home, Windy Hill?

3. Did the trial court err as a matter of law in granting summary judgment where the evidence demonstrates that the attorneys' negligence caused the assets contained in Philip's trust to pass outside his will?

- 4 -

4. Did the trial court err as a matter of law in granting summary judgment where the facts are distinguishable from those in *Agnew*, and allowing Brinton to pursue his claim would advance the public policy goals of *Agnew*?

Appellant's Brief at 4. Although Appellant states four questions, his position reduces to three points, each of which we will consider below: (1) he has standing to sue Appellees for malpractice; (2) he is entitled to prove standing through extrinsic evidence; and (3) Philip's Will signifies his intent for Appellant to inherit the entire Trust.

It is well-settled that

[o]ur scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

Summary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the nonmoving party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Only when the facts are so clear that reasonable minds could not differ can a trial court properly enter summary judgment.

*Hovis v. Sunoco, Inc.*, 64 A.3d 1078, 1081 (Pa. Super. 2013) (quoting *Cassel-Hess v. Hoffer*, 44 A.3d 80, 84-85 (Pa. Super. 2012)). Moreover, "[w]here the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers to survive summary judgment." *Krauss v. Trane U.S. Inc.*, 104 A.3d 556, 563 (Pa. Super. 2014). "Failure of a non-moving party to adduce sufficient evidence on an issue essential to

his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law." *Id.*

Appellant's first argument boils down to the following. Appellees represented Philip—not Appellant—in connection with preparation of Philip's Will and Trust. Appellant received everything he was entitled to receive under Philip's Will, *i.e.,* all of Philip's personal property, the Windy Hill residence and a residue. Appellant also received $3,149,406.50 from Philip's Trust, half of the trust's assets. Yet according to Appellant, this was not enough. He claims that Philip intended him to receive **all** Trust assets, but Appellees negligently failed to amend the Trust to mirror Philip's intent. Thus, Appellant contends, he has standing individually to sue Appellees for negligence as an intended third-party beneficiary of the Trust.

Appellant's argument requires analysis of two decisions from our Supreme Court: *Guy v. Liederbach*, 459 A.2d 744 (Pa. 1983), and *Agnew*. *Guy* held that plaintiff Guy, expressly named as an heir in an executed will, stated a cause of action for breach of contract against the lawyer who drafted the will, where the signed will was later declared invalid because Guy herself witnessed the testator's signature, at the lawyer's direction, in violation of then-applicable New Jersey law. The Court adopted Restatement (Second) of Contracts § 302 in determining that Guy had standing to make such a claim as an intended third-party beneficiary of the contract for legal services between the testator and his lawyer. *Id.* at 757. The Court utilized Section

302's framework to devise a two-part test for determining whether a person is an intended third-party beneficiary of a contract between others, such that the third party may enforce the contract: (1) the recognition of the beneficiary's right must be "appropriate to effectuate the intention of the parties," and (2) the performance must "satisfy an obligation of the promisee to pay money to the beneficiary" or "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *Id.* at 751. The first part of the test sets forth a standing requirement, which restricts application of the second part of the test, "which defines the intended beneficiary as either a creditor beneficiary (§ 302(1)(a)) or a donee beneficiary (§ 302(1)(b))." *Id.* The Court applied this test to hold that a third party to a legal services contract has standing to bring an action against the testator's lawyer to enforce a failed legacy where "the intent to benefit [the third party] is clear and the promisee (testator) is unable to enforce the contract." *Id.* at 747. The Court expressly overruled prior case law requiring privity in such cases. *Id.* at 751.

*Guy* taught that in order for a plaintiff to have standing as a third-party beneficiary to the contract of others, her right to performance must be "appropriate to effectuate the intentions of the parties," and the "standing requirement leaves discretion with the trial court to determine whether recognition of third-party beneficiary status would be appropriate." *Id.* The Court made clear that the relevant underlying contract on which the plaintiff

is suing "is that between the testator and the attorney for the drafting of a will. The will, providing for one or more named beneficiaries, clearly manifests the intent of the testator to benefit the legatee. . . . Since only named beneficiaries can bring suit, they meet the first step standing requirement of § 302." *Id.* The will naming the plaintiff was signed by the testator, and therefore an order allowing the plaintiff to enforce the contract between the testator and his lawyer would "effectuate the intentions of the parties." *Id.*

Ultimately, *Guy* held that the plaintiff had standing to pursue her claim against the drafting attorney because she was named in an executed will that was made invalid only through the drafting attorney's clear error regarding the applicable law relating to witnesses. The Court specifically held "persons who are named beneficiaries under a will and who lose their intended legacy due to the failure of an attorney to properly draft the instrument should not be left without recourse or remedy[.]" *Id.* at 752.

With respect to *Agnew*, as of 2010, Robert Agnew had a will that "bequeathed specific gifts of cash and property to selected friends and family, including [the plaintiffs], who are relatives of his late wife, and the residue of his estate to [a revocable trust]." *Id.* at 249. Agnew also had a trust that directed the assets should be used, first, to satisfy the balance of any legacies in the will and, then, to fund scholarships at four colleges and universities, with the residue going to three of those schools. After entering a hospice, Agnew told his attorney "he wanted to limit the amounts going to charity and

provide more funds to [plaintiffs]." *Id.* at 250. At Agnew's instruction, the attorney prepared a revised will and an amendment to the trust, which "continued to provide for gifts of $250,000 to four colleges, but expressly provided that the residue of the assets of the Revocable Trust was to be distributed to [plaintiffs]." *Id.* In August 2010, Agnew signed the revised will, but he did not sign the amendment to the trust because the attorney "did not have a copy of that document with him at the time." *Id.* Agnew died in January 2011 without ever executing the amendment to the trust. The plaintiffs, who stood to benefit if Agnew had executed the amendment, sued Agnew's attorney, claiming that the attorney breached his contract to Agnew and thus deprived them sums of money to which they were entitled under the unexecuted amendment to the trust.

The Supreme Court held that the plaintiffs lacked standing to sue the attorney. The Court distinguished *Guy* on the ground that *Guy* involved an "**executed**" testamentary document expressly identifying the plaintiff as a legatee. *Agnew*, 152 A.3d at 259, 262, 264 (emphasis in original). The fact that the testator signed his will "clearly express[ed] his intent to benefit [the plaintiff]." *Id.* at 262. Thus, "to the extent the attorney has drafted testamentary documents, which have been fully executed by the testator, such documents are conclusive evidence the testator intended to benefit the named beneficiaries." *Id.* at 264. The trust in *Agnew*, on the other hand, was unexecuted, and "the fact [the *Agnew* plaintiffs] were named as

beneficiaries in the **unexecuted** 2010 Trust Amendment does not provide them with standing to recover on a contract claim against [Agnew's attorney]." *Id.* at 259 (emphasis in original).

Public policy considerations, the Court observed,

weigh against allowing a party to use an unexecuted testamentary document to establish standing to sue the testator's lawyer for breach of contract as a third-party beneficiary under Restatement Section 302. In adopting Section 302, the *Guy* Court recognized the potential consequences of relaxing the strict privity requirement, such as a possible reduction in the quality of legal services rendered to clients due to attorneys' increased concern over liability to third parties . . . As a result, the Court did not eliminate the privity requirement for a negligence action, specifically stating third-party beneficiary standing should be narrowly tailored. *Id.* at 746, 751, 752 (observing "a properly restricted cause of action for third party beneficiaries in accord with the principles of [Section 302] is available to named legatees;" Section 302 "provides an analysis of third party beneficiaries which permits a properly restricted cause of action;" "the class of persons to whom the defendant may be liable is restricted by principles of contract law;" and "cases such as [Guy's] who is a third party beneficiary, sound in [contract], and involve considerations more restrictive than [tort].")." Moreover, *Guy* repeatedly referred to "**named** legatees" and "**named** beneficiaries" when describing potential claimants in a breach of contract action. 459 A.2d at 746, 749, 751, 752 (emphasis added). The reasons for doing so remain compelling, and may be even more compelling given advances in technology which freely enable duplication, manipulation and reproduction of documents and pieces of documents. Requiring an alleged heir to point to an executed testamentary document—expressly identifying him— before he may sue the testator's lawyer for breach of a contract to which he was not a party serves to protect the integrity and solemnity of the testator's bequests from fraudulent claims. Correspondingly, such a requirement lessens the chance a testator's attorney will be required to pay a bequest the testator never intended to make in the first place.

*Id.* at 262-63. The Court also reasoned that the "mercurial" nature of estate planning counseled against "allowing would-be legatees to use extrinsic evidence" such as an unexecuted trust or verbal communications "to establish third-party beneficiary standing to bring a legal malpractice action." *Id.* at 263. The Court elaborated that extrinsic evidence of a testator's intent is untrustworthy

> where that legal agreement could have involved any number of possible testamentary permutations or potential beneficiaries, and ultimately required execution by the testator to validate those drafts. A testator may change an estate plan at any time, adding and subtracting legatees, increasing and decreasing bequests. Under such mercurial circumstances, we decline to confer standing to purported heirs to prosecute a breach of contract action against the testator's attorney on the basis the attorney failed to ensure the testator signed the particular document making a potential bequest.

> We recognize that Agnew apparently verbally expressed, in 2010, a desire to benefit his late wife's family more and to leave less to charity. [The attorney] drafted the 2010 Will which provided substantial bequests to various family members, including [the plaintiffs]. [The attorney] also drafted the 2010 Trust Amendment which provided [the plaintiffs] would receive the residue of the trust after all legacies provided for in the 2010 Will, and the five college scholarships, were funded. Agnew signed the 2010 Will, but did not sign the 2010 Trust Amendment, for reasons ultimately unknown and unknowable. It is possible Agnew decided the bequests in his revised Will sufficiently benefitted [the plaintiffs] and the 2010 Trust Amendment was unnecessary. Or, Agnew could have forgotten about the 2010 Trust Amendment or mistakenly believed he had signed the document.

*Id.* at 263 (footnotes omitted).

Presently, Appellant's action suffers from the same defect as the plaintiffs' action in ***Agnew***. Appellees represented Philip, not Appellant. Philip

- 11 -

executed a will in 2006 naming Appellant the sole beneficiary and bequeathing Windy Hill, Philip's tangible personal property, and a residuary interest to Appellant. In 2006 or early 2007, Appellees drafted an amendment to the Trust that made Appellant the sole beneficiary of the Trust. Philip never signed the amended Trust. As in **Agnew**, the fact that Appellant was named as sole beneficiary in the unexecuted amended Trust does not give him standing to sue Appellees. It also deserves mention that Appellant received everything he was entitled to receive under the executed 1951 Trust and executed 2006 will. The law does not entitle him to anything more.

Appellant's reliance on **Fortunato v. CGA Law Firm**, No. 1:17-CV-00201, 2017 WL 3129825 (M.D.Pa. July 24, 2017), is misplaced. In **Fortunato**, the decedent's original will left his entire estate to his two children, but he hired the defendant attorney to change his will. The attorney prepared a revised will that left fifty percent of the residuary estate to one child, twenty percent to the second child, and thirty percent to his grandchildren. The attorney allegedly assured the decedent that Merrill Lynch accounts worth $1.1 million were included in the residue. The decedent executed the revised will. Following the decedent's death, however, it came to light that the Merrill Lynch accounts were not part of the residue, because they were "transfer on death" accounts to the two children in equal shares. As a result, none of the Merrill Lynch accounts passed to the grandchildren's share of the residue. The grandchildren filed a malpractice action against the

attorney, who filed a motion to dismiss the complaint. The district court denied the motion to dismiss, construing the grandchildren's claim "as one based on a failed legacy that passed outside the will" (a claim that the court believed was cognizable under *Guy*) instead of "a claim that [the decedent's] true intent was to bequeath [the grandchildren] a greater legacy than that afforded by the will." *Id.* at *5. The district court determined that the grandchildren had standing to sue due to the attorney's "mistaken belief" that the Merrill Lynch accounts fell within the residue. *Id.*

Appellant argues that the present case resembles *Fortunato* because it, too, arises from attorney negligence:

> [Appellee] Louis admits that he never reviewed or analyzed the assets in the Revocable Trust, and never discussed the Revocable Trust with Philip, even while conceding the relevancy of the Revocable Trust to Philip's estate plan. Worse yet, while the evidence shows that [Appellee] Saul Ewing was aware no later than 1999 that over 90 percent of Philip's assets were held in the Revocable Trust, and that maintaining Windy Hill required the bulk of Philip's income from the Revocable Trust, Attorney Louis never advised Philip how his assets were allocated, and never advised Philip that the assets in the Revocable Trust were separate and distinct from those included in the Will.

Appellant's Brief at 25. This negligence "resulted in an incoherent estate plan" that failed to realize Philip's "clear instruction to leave 'everything' to [Appellant]." *Id.* at 26.

Accepting the allegations in *Fortunato* as true, but without deciding whether they establish third-party standing, we conclude that *Fortunato* is distinguishable from the present case. The attorney in *Fortunato* negligently

advised that the **executed** revised will matched the testator's intent; in reality, it did not. Here, in contrast, Appellees prepared an amended Trust that **did** match Philip's intent, but Philip never signed it. Even more importantly, under **Agnew**, Appellant lacks standing to sue Philip's attorneys for malpractice based on an **unexecuted** Trust.

In his second argument, Appellant insists that extrinsic evidence demonstrates that Philip intended to amend the Trust to make Appellant sole beneficiary. Once again, this argument fails under **Agnew**, which prohibits use of extrinsic evidence to establish third-party standing to bring a legal malpractice action. **Id.**, 152 A.3d at 263.

Third, and finally, Appellant argues that Philip's executed Will constitutes evidence of his intention to leave Appellant the entire Trust. This, too, runs aground under **Agnew**'s determination that "we do not consider [Agnew's 2010 Will] as dispositive of [the plaintiffs'] right to sue [the attorney] for any breach related to the Revocable Trust and its amendments." **Id.** at 259. The language of Philip's Trust stands on its own, and as such, does not leave Appellant the entire Trust.

For these reasons, we affirm the order granting summary judgment in favor of Appellees.

Order affirmed.

President Judge Emeritus Stevens joins the opinion.

- 14 -

Judge Strassburger files a concurring opinion in which Judge Stabile joins.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/31/18