Benjamin J. JONES, Jr., Executor of the Estate of Gail B. Jones, Deceased, Appellant,

v.

Walter W. WILT, Appellee.

Superior Court of Pennsylvania.

Argued Dec. 7, 2004.

Filed March 15, 2005.

Michael A. Koranda, Harrisburg, for appellant.

Kathryn L. Simpson, Harrisburg, for appellee.

BEFORE: BENDER, PANELLA and MONTEMURO *, JJ.

OPINION BY BENDER, J.:

¶ 1 Benjamin J. Jones, Jr., Executor of the Estate of Gail B. Jones, Deceased, (Appellant) appeals from the order granting summary judgment in favor of Walter W. Wilt, Esquire (Appellee), in Appellant's action against Appellee for legal malpractice and breach of contract. For the following reasons, we affirm.

¶ 2 The trial court summarized the facts of this case as follows:

In 1991, Gail B. Jones ("Decedent") retained the Defendant, Attorney Walter W. Wilt (hereinafter, "Wilt") to prepare a Last Will and Testament (herein-

after, the "Will") and a Trust Agreement on her behalf. The Will was executed on November 12, 1991, and the Trust Agreement was executed on January 23, 1992.

At the time Decedent retained Wilt, she was expecting to receive a large inheritance from her father's estate. Carolyn B. Leech (hereinafter, "Leech"), Decedent's sister, is a named beneficiary under the Will and the Trust Agreement. The Trust Agreement, under paragraph 3(C), provides that the entire corpus of the trust would pass to Leech upon Decedent's death.

In addition, Item II of the Will specifically devises and bequeaths certain assets to Leech. Among the assets are a cottage in Lycoming County, Pennsylvania, shares of stocks, assets in a Merrill Lynch account, the balance remaining in Decedent's saving accounts, and various personal items.

A provision in Item III of the Will directs the remainder of the estate to pass to the Plaintiff, Benjamin Jackson Jones, Jr. (hereinafter, "Jones"), Decedent's husband and Executor of the Will. Specifically, Item III provides that "[A]ll the rest, residue, and remainder of my estate, whether real or personal, I give, devise, and bequeath to my husband, BENJAMIN JACKSON JONES, JR." (Last Will and Testament of Gail B. Jones, Item III).

The will also contains a clause which addresses the payment of taxes on Decedent's property. Item V of the Will, the provision at issue herein, provides:

All federal, state, and other death taxes payable on the property forming my gross estate for tax purposes, whether or not it passes under the Will, shall be paid out of the principal

* Retired Justice assigned to the Superior Court.

of my residuary estate just as if they were my debts, and none of those taxes shall be charged against any beneficiary.

(Last Will and Testament of Gail B. Jones, Item V).

Decedent died on August 3, 1999. The Will was probated upon the death of Decedent, and pursuant to its tax clause, the residuary of the Estate bore responsibility for payment of taxes on the Trust assets, though they passed outside the Will. Based upon the value of the gross estate for tax purposes, Decedent's estate had a federal estate tax liability of $83,359.28 and a state inheritance tax liability of $132,183.76, exclusive of interest and penalties. *See* Plaintiff's Exhibit 2. Pursuant to the Will, all of the taxes were paid out of the principal of the Decedent's residuary estate.[FN. 1]

Plaintiff asserts that because of alleged malpractice on the part of Wilt in not utilizing certain estate tax planning methods, the Estate has paid over $90,000.00 in unnecessary taxes and assessments, and is liable to the taxing authorities for substantially more. *See* Plaintiff's Brief In Opposition to Defendant's Motion For Summary Judgment, N.10. Plaintiff asserts that because of the alleged malpractice, Decedent's Estate was essentially depleted, which deprived Jones of an inheritance worth as much as $171,948.79. See, Plaintiff's Brief, p. 13.

Jones asserts two claims against Wilt. In his first claim, in his capacity as Executor, he alleges that Wilt negligently breached duties owed to the Decedent, when counseling Decedent and preparing the Will and the Trust Agreement by (a) failing to conduct a reasonable investigation into the nature and value of Decedent's testamentary assets;

(b) failing to adequately advise Decedent on the potential impact of various federal and state taxes applicable to the transfer of property described in the Will and Trust Agreement; (c) failing to adequately advise Decedent of reasonable and commonly known estate planning techniques designed to preserve the assets of the Estate or that would have eliminated or reduced the taxes owed by Decedent's Estate; and (d) failing to adequately advise Decedent that her residuary estate lacked sufficient resources to pay all of the taxes that would be owed at the time of her death. (First Amended Complaint, paragraph 17).

In his second claim, Jones, in his individual and personal capacity, as a named legatee, asserts a claim against Wilt under a third party beneficiary/contract theory. Jones asserts that, based upon his status as an intended third party beneficiary of the attorney-client contract, Wilt breached his contractual duties by:

(a) preparing a Will and Trust Agreement that did not accomplish Decedent's testamentary objective of eliminating or reducing the federal and state taxes that would be owed at the time of Decedent's death;

(b) preparing a Will and Trust Agreement which did not contain commonly-known and readily available tax avoidance devices, such as a Qualified Terminable Interest Property (QTIP) trust, which would have preserved the assets of Decedent's Estate, or eliminated or reduced the taxes which the Estate could or would incur;

(c) preparing a Will which called for payment of taxes out of the residuary estate when the residuary estate lacked the resources to satisfy the entire tax burden;

(d) advising Decedent that Jones' participation was required in order to prepare any testamentary instrument which eliminated or reduced taxes, and when such participation was not in fact required;

(e) advising Decedent that there were no opportunities to avoid or reduce the taxes without Jones' participation; and

(f) failing to advise the Decedent of the potential impact of taxes applicable to the transfer of property described in the Will and Trust Agreement.

> [FN. 1] In a proceeding before the Dauphin County Court of Common Pleas Orphans' Court Division, Jones, as Executor petitioned for declaration that federal estate taxes and state inheritance taxes should be apportioned between the residue of the Estate and the *inter vivos* trust. The Orphans' court denied the Executor's Petition, which denial the Executor appealed. The Superior Court affirmed the decision of the Orphans' Court, concluding that the tax apportionment language of the Will, providing that all death taxes be paid from the principal of the residuary estate, was clear and unambiguous. *In Re Estate of Jones*, 796 A.2d 1003 (Pa.Super.2002).

Trial Court Opinion (T.C.O.), 6/3/04, at 1–4. Following the close of discovery, Appellee filed a motion for summary judgment, which the trial court granted. Appellant then filed this appeal raising the following question for our review:

> Whether the trial court erred in concluding that Appellants could not present evidence outside the four corners of the testamentary instruments to establish that Appellee had acted negligently or breached his contractual duty to provide legal services to the Decedent in a manner consistent with the profession at large?

Brief for Appellant at 4.

¶ 3 Initially, we note that Appellant has presented a question arising from his rights in his dual roles as the executor of the estate and as a named beneficiary in the will. The trial court concluded that Appellant had standing to assert his malpractice claim as an executor but had no standing to assert a breach of contract claim as a third party beneficiary. T.C.O., 6/3/04, at 5, 8. However, while it is clear that under Pennsylvania law, a named beneficiary in a will may assert a cause of action, on a third party beneficiary theory, for breach of contract against the attorney who drafted the will, *see Guy v. Liederbach*, 501 Pa. 47, 459 A.2d 744, 751–52 (1983) (plurality opinion), it is less clear whether an executor may bring a claim for malpractice. In *Guy*, our Supreme Court stated:

> We therefore turn to the question of whether the estate could sue the drafting attorney for malpractice and receive damages for the failure of the instrument to effectuate testator's intent. In any cause of action for malpractice, some harm must be shown to have occurred to the person bringing suit. In the case of a failed legacy, the estate is not harmed in any way. California, the first state to find a cause of action in malpractice for beneficiaries has held that the executor has no standing to bring an action.

> Indeed, the executor of an estate has no standing to bring an action for the amount of the bequest against an attorney who negligently prepared the estate plan, since in the normal case the estate is not injured by such negligence except to the extent of the fees paid; only the beneficiaries suffer the real loss.

*Heyer v. Flaig,* 70 Cal.2d 223, 228, 449 P.2d 161, 165, 74 Cal.Rptr. 225, 229 (1969). Even if the estate would have standing to bring the suit, the fact that no harm had occurred to it and the estate has nothing to gain would remove any incentive for suit.

*Guy,* 459 A.2d at 749. Thus, the estate is required to show that it suffered some harm in order for it to bring suit, and according to *Guy,* this ordinarily would not be the case.

█ ¶ 4 But the trial court concluded that the estate had standing pursuant to 20 Pa.C.S. § 3373, which states:

> § 3373. **Action by or against personal representative**
>
> An action or proceeding to enforce any right or liability which survives a decedent may be brought by or against his personal representative alone or with other parties as though the decedent were alive.

Whether in fact this statute bestows standing upon Appellant as executor would depend upon whether the estate was harmed by the alleged malpractice. *See Guy,* 459 A.2d at 749. However, since we conclude that Appellant in fact had standing as a third party beneficiary, and his sole challenge on appeal is to the trial court's ruling on the admissibility of extrinsic evidence to prove both claims, we shall review this evidentiary ruling and defer any analysis of the executor standing issue as it is not necessary for our disposition of this case.

¶ 5 Before us for review is the trial court's order granting Appellee summary judgment, part of which included a ruling that Appellant could not prove his claims by presenting "facts outside the will," *i.e.* extrinsic evidence. "This Court's scope of review of an order granting summary judgment is plenary." *Atcovitz v. Gulph Mills Tennis Club, Inc.,* 571 Pa. 580, 812 A.2d 1218, 1221 (2002). "Our standard of review on an appeal from the grant of a motion for summary judgment is well-settled. A reviewing court may disturb the order of the trial court only where there has been an abuse of discretion or an error of law." *Capek v. Devito,* 564 Pa. 267, 767 A.2d 1047 1048 n. 1 (2001).

¶ 6 "Pennsylvania law provides that summary judgment may be granted only in those cases in which the record clearly shows that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law." *Gutteridge v. A.P. Green Services, Inc.,* 804 A.2d 643, 651 (Pa.Super.2002). "When the facts are so clear that reasonable minds cannot differ, a trial court may properly enter summary judgment." *Basile v. H & R Block, Inc.,* 563 Pa. 359, 761 A.2d 1115, 1118 (2000).

¶ 7 Appellant claims that he cannot possibly prove that Appellee "breached his contract to provide legal services without resorting to extrinsic evidence." Brief for Appellant at 19. We agree. "To limit a[ ]cause of action by a non-client to the face of the testamentary document that does not reflect the testator's true intent would render the recognition of [this] cause of action meaningless." *Blair v. Ing,* 95 Hawai'i 247, 21 P.3d 452, 467 (2001). In order to permit a party to properly pursue the cause of action recognized in *Guy,* and subsequently reaffirmed in *Scarpitti v. Weborg,* 530 Pa. 366, 609 A.2d 147, 150 (1992), we must permit the introduction of extrinsic evidence. Yet while certain types of extrinsic evidence should be admitted to prove such claims, we conclude that the trial court properly excluded Appellant's expert's opinion.

█ ¶ 8 As part of discovery, Appellee was deposed and was questioned regarding his representation of Decedent and his

drafting of her will.[1] He testified that Decedent told him that "she did not want her husband to have" "the assets that she had received from her father ... She wanted those assets to go to her sister." Reproduced Record (R. 123a). Repeatedly, Appellee stated that this was her primary intent and that she did not care about the tax consequences so long as Leech received the assets upon Decedent's death. Thus, he testified:

Q   Did you make any specific recommendations to her on November 5th as to the type of techniques or devices that she should use to minimize or avoid taxes?

A   No.

Q   Why is that?

A   She made it pretty clear at that time that she was not interested in tax avoidance. She simply wanted to be sure that her sister got everything. If her husband got anything, great. If he didn't, great.

She was not concerned—in my conversation with her—about taking care of her husband.

R. at 129a. And indeed, this intent is also expressly reflected in the will wherein all the assets pass directly to Leech. Thus, all the evidence shows that Decedent intended to pass the assets directly to Leech upon Decedent's death.

¶ 9 In responding to Appellee's motion for summary judgment, Appellant provided an expert opinion by Kirby G. Upright, LLM, CPA, which states that Appellee was negligent in not advising Decedent of the utilization of a Qualified Terminable Interest Property Trust (QTIP Trust). R.

169a. This is the "extrinsic evidence" that Appellant claims the trial court erred in not considering. According to the expert opinion, by utilizing a QTIP trust, the "assets could have passed into the trust at Mrs. Jones' death, tax-free and, by Mrs. Jones' direction in the trust, passed to Carolyn B. Leech *upon the death of Mrs. Jones' surviving husband.*" R. at 170a (emphasis added). However, Appellant has absolutely no evidence that shows that Decedent intended to delay the passing of these assets until after Appellant's death. The entire expert opinion is premised on the fact that Decedent intended to leave these assets for the benefit of Appellant during his lifetime, and that only after his death would the assets then pass to Leech. As there is absolutely no evidence to support this fact, we conclude that the opinion is without a proper foundation and therefore, the trial court did not err in not considering it. *See Reliance Universal, Inc. of Ohio v. Ernest Renda Contracting Co., Inc.*, 308 Pa.Super. 98, 454 A.2d 39, 42 (1982) (stating, "It is well-settled law in Pennsylvania that an expert may not express his opinion upon facts which are not warranted in the record, regardless of the expert's skill and experience.").

¶ 10 Judgment **AFFIRMED.**

---

1. We note that both parties present amorphous arguments for and against the admissibility of "extrinsic evidence." Neither party recognizes, however, that Appellee's deposition testimony is extrinsic evidence. Of course, as Decedent is no longer available, and Appellee is one of the people most likely to possess knowledge regarding the nature of his contract with Decedent and what she intended, we conclude that his testimony is the sort of extrinsic evidence that is admissible.