**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, JJ.**

| | | |
|---|---|---|
| ESTATE OF ROBERT H. AGNEW, MARGARET ALZAMORA, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF ROBERT H. AGNEW, WILLIAM AND SHEILA HENNESSY, H/W, MARGARET HENNESSY, JAMES AND CHRISTINE HENNESSY, H/W AND PAUL AND EILEEN JANKE, H/W | : : : : : : : : : : : : | No. 76 MAP 2015<br><br>Appeal from the Order of the Superior Court at No. 2195 EDA 2014, dated February 2, 2015, reconsideration denied April 7, 2015, reversing the grant of summary judgment of the Chester County Court of Common Pleas, Civil Division, at No. 12-09300, dated June 4, 2014 and remanding |
| v. | : : : | ARGUED: May 10, 2016 |
| DANIEL R. ROSS, ESQUIRE, MEGAN MCCREA, ESQUIRE AND ROSS & MCCREA, LLP | : : : : : : | |
| APPEAL OF: DANIEL R. ROSS, ESQUIRE AND MEGAN MCCREA, ESQUIRE | : : : : | |

**OPINION**

**JUSTICE DOUGHERTY**                            **DECIDED: January 19, 2017**

We consider whether individuals who are not named in an executed testamentary document have standing to bring a legal malpractice action against the testator's attorney, as purported third-party beneficiaries to the contract for legal services between the testator and his attorney. For the reasons that follow, we conclude such individuals do not have standing to sue the testator's attorney for a breach of contract. We therefore reverse the Superior Court and remand for

reinstatement of the trial court's order granting summary judgment and dismissing the claims.

As the appeal arises from the grant of summary judgment, we set forth the facts as viewed in the light most favorable to the non-moving parties, in this case, plaintiffs-appellees William and Shelia Hennessy, James and Christine Hennessy, Eileen and Paul Janke, Margaret Hennessy and Margaret Alzamora. *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 195 (Pa. 2007). In November 2003, the testator Robert Agnew retained defendant-appellant Daniel Ross, Esquire, to draft various estate planning documents.[1] Ross drafted a Will and an amendment to Agnew's Revocable Trust, which was first established in 1994, in order to effectuate Agnew's intended bequests.[2] Over the next several years, Ross drafted various amendments to both the Revocable Trust and the Will, as directed by Agnew; these documents, including a 2007 Trust Amendment, were executed by Agnew.[3] As of 2010, Agnew's Will bequeathed specific gifts of cash and property to selected friends and family members, including appellees, who are relatives

---

[1] The record does not contain a retainer agreement or other contract for legal services between Agnew and Ross. From our review of the record, it appears Ross billed Agnew for each service as he provided it. There is no dispute appellees were not parties to this contract.

[2] The parties refer to Agnew's Will and the amendments to the Revocable Trust as "testamentary documents." The Will and the Revocable Trust are two separate types of testamentary documents. The Revocable Trust is an *inter vivos* trust supporting Agnew during his lifetime and distributing the residue of his estate and the remains of the trust upon his death. The requirements for wills and trusts generally are codified in the Probate, Estates and Fiduciaries Code (Probate Code). *See* 20 Pa.C.S. §§2501-2521 (wills); 20 Pa.C.S. §§7701-7799.3 (trusts).

[3] Agnew signed trust amendments in 2003, 2006, and 2007. Changes made to the Revocable Trust by the 2007 Trust Amendment did not involve either beneficiaries or distributions; references in this opinion to the 2007 Trust Amendment are taken from the 2006 Trust Amendment, as the 2007 Trust Amendment is not separately included in the record. The parties do not dispute that the relevant content of the 2006 and 2007 Trust Amendment is the same.

of his late wife, and the residue of his estate to the Revocable Trust. The 2007 Trust Amendment more specifically directed that upon Agnew's death the remaining principal and accumulated income of the Revocable Trust should be distributed to pay the balance of any legacies in the Will that the estate is otherwise unable to pay. 2007 Trust Amendment at 2, Exhibit E to Motion for Summary Judgment. If there were assets remaining in the Revocable Trust following satisfaction of the legacies under the Will, the remaining assets were to be distributed to Muhlenberg College, Temple University, Chestnut Hill College and Drexel University in the form of five $250,000 scholarship funds. *Id.* at 2-3. If there were assets remaining following distribution of the scholarship funds, the residue was to be distributed to Muhlenberg College, Chestnut Hill College and Drexel University. *Id.* at 3.

In March 2010, Agnew was admitted into a hospice program.[4] During that summer, appellee Margaret Alzamora, contacted Ross and told him Agnew wanted to make changes to his estate plan. Accordingly, on August 18, 2010, Ross met with Agnew to discuss amendments to various existing testamentary documents and to establish a new trust relating to property Agnew owned in Florida (the Florida Trust). While Alzamora participated in a portion of the meeting between Agnew and Ross, she was not present when the two actually discussed the estate plan. During the meeting, Agnew related to Ross he wanted to limit the amounts going to charity and provide more funds to appellees. Deposition of Ross, 10/3/2013 at 41, Exhibit J to Motion for Summary Judgment. Agnew told Ross that Alzamora would subsequently provide him with further details. *Id.* at 45.

On August 21, 2010, Alzamora contacted Ross by email and advised him the residue of Agnew's Revocable Trust was no longer to be distributed to the three

_____

[4] There is no claim that Agnew was at any relevant time incompetent.

colleges indicated in the 2007 Trust Amendment, but now was to be divided into five equal shares between appellees. Email dated 8/10/2010, Exhibit K to Motion for Summary Judgment. Alzamora also informed Ross that Agnew wished to make bequests to appellees' children. *Id.* Ross drafted an amendment to the Revocable Trust (the 2010 Trust Amendment), which continued to provide for gifts in the amount of $250,000 to four colleges, but expressly provided that the residue of the assets of the Revocable Trust was to be distributed to appellees. 2010 Trust Amendment at 3-4, Exhibit L to Motion for Summary Judgment. Additionally, Ross drafted a revised Will, which provided various monetary gifts to appellees and their children.[5] 2010 Will at 1-3, Exhibit L to Motion for Summary Judgment.

On August 27, 2010, Ross emailed the revised Will and the 2010 Trust Amendment to Alzamora. Agnew reviewed the documents with Alzamora and did not communicate any comments or request any changes to the documents. Agnew did not, however, sign the revised Will or the 2010 Trust Amendment at that time. On September 2, 2010, Ross met with Agnew and Agnew did sign the Florida Trust and the 2010 Will, which directed the residue of his estate should be distributed in accord with the Revocable Trust.[6] Agnew did not, however, sign the 2010 Trust Amendment. Ross

---

[5] Under the 2010 Will, Margaret Hennessy received $25,000, James and Christine Hennessy, Paul and Eileen Janke, and William and Sheila Hennessy received $50,000 each, and Margaret Alzamora received $75,000. James Hennessy also received Agnew's Florida real estate and Margaret Alzamora received Agnew's New Jersey real estate. Appellees' children received bequests ranging from $1000 to $250,000. Exhibit M to Motion for Summary Judgment, 2010 Will at 1-3.

[6] Agnew's Will provides:

> Residue. I give all the rest of my estate of whatever nature wherever situate, to the then-acting Trustee or Trustees under the Trust Agreement executed on December 15, 1994, by my wife, MARIE H. AGNEW, and me with FIRST FIDELITY BANK, N.A., as initial trustee, to be held and/or distributed in accordance with the provisions thereof as existing at the time

(continued…)

did not have a copy of that document with him at that time. Ross retained all of the executed documents and stored them in his firm's will vault.

Agnew died in January 2011. Letters Testamentary were granted to Alzamora and the revised Will executed in September 2010 was admitted to probate as Agnew's last will and testament. On February 10, 2011, Ross informed Alzamora it was his belief the 2010 Trust Amendment had never been executed. Alzamora informed Ross she did not have a signed version of the 2010 Trust Amendment. Alzamora Affidavit dated 2/11/2014, Exhibit K to Memorandum of Law in Opposition to Motion for Summary Judgment.

Appellees and the Estate of Robert Agnew filed suit against Ross, his partner Megan McCrea, Esq., and Ross & McCrea LLP (collectively referred to as appellants), alleging appellants breached the contract to provide legal services to their client Agnew, when Ross failed to have Agnew execute the 2010 Trust Amendment. Specifically, appellees claimed to be third-party intended beneficiaries of the contract for legal services between Agnew and Ross, and as a result of Ross's breach, appellees were denied sums of money to which they were entitled under the 2010 Trust Amendment. Appellees also asserted a legal malpractice claim sounding in negligence against Ross and McCrea individually, and against Ross & McCrea LLP on a theory of *respondeat superior*.

Appellants filed preliminary objections and the trial court sustained them in part, holding the Estate of Robert Agnew was an improper party to the suit, and Alzamora's claims in her capacity as executrix should be dismissed. Trial Court Order dated

---

(…continued)
> of my death. The current Trustees of this Trust are MARGARET ALZAMORA and me.

2010 Will at 3-4, Exhibit M to Motion for Summary Judgment.

5/2/2013, Exhibit C to Motion for Summary Judgment. The trial court also dismissed appellees' negligence and *respondeat superior* claims against Ross, McCrea and the firm, on the basis the individual appellees did not have attorney-client relationships with appellants to support those claims. *Id.* However, the trial court concluded appellees could potentially establish they were intended third-party beneficiaries of the legal services contract between Ross and Agnew, and allowed that breach of contract claim to proceed against Ross and McCrea individually. *Id.*

The parties proceeded to discovery, during which Ross testified in a deposition with regard to the 2010 Trust Amendment: "I believe he would have signed the amendment had I prepared it, but because it was not with me, it was not discussed and until I discussed it with him I can't say for certain he would have signed it." Deposition of Ross, 10/3/2013 at 30, Exhibit J to Motion for Summary Judgment; *see also id.* at 77-78 ("… [Agnew] had generally indicated that intent but the specifics I had not spoken to him about. So until I spoke to him specifically about that it is only speculation what he would have signed."). Ross attributed his failure to bring the 2010 Trust Amendment to the September meeting to "oversight." *Id.* at 30. He further stated it was a mistake not to present the 2010 Trust Amendment to Agnew. *Id.* at 30, 78. During her deposition, Alzamora acknowledged Agnew was aware the 2010 Trust Amendment had been prepared and he had previously reviewed it, but confirmed that it was not among the documents executed at the September 2010 meeting. Deposition of Alzamora, 11/7/13 at 46-50, 88. Exhibit F to Motion for Summary Judgment.

At the close of discovery, appellants moved for summary judgment, which the trial court granted. The trial court recognized that appellees argued they are third-party beneficiaries to the contract for legal services between Ross and Agnew, and framed the issue before it as "whether there is any executed document which indicates that

these plaintiffs were intended as beneficiaries." Trial Court Opinion dated June 4, 2014 at 4, 7. In dismissing appellees' claim, the court held in order to maintain the breach of contract action against Ross as third-party beneficiaries to the legal services contract between Agnew and Ross, appellees would need to show that there is an "otherwise valid" document naming them as recipients of all or part of the estate. *Id.* at 7. "In other words, the beneficiary's right must be shown and established by the showing of some otherwise valid document that effectuates the intention of the parties [to the legal services contract]." *Id.* The trial court relied on *Gregg v. Lindsay*, 649 A.2d 935 (Pa. Super. 1994), where the Superior Court held the claimant was not entitled to sue the testator's lawyer for breach of contract when the testator never signed the drafted will naming claimant as heir.[7] In *Gregg*, there was evidence to show the testator approved of the new will, but there were no witnesses available to effectuate his execution of it at that time, and he later died before signing it. *Id.* at 936-37. In this case, the trial court noted "there is no competent evidence of that which transpired at the September [2010] meeting between Mr. Agnew and Ross." Trial Court Opinion at 9.

The Superior Court reversed, opining there was evidence of the September 2, 2010 meeting, and implying the trial court did not examine the facts in the light most favorable to appellees in violation of the applicable standard of review on appeal from summary judgment. *Estate of Agnew v. Ross*, 110 A.3d 1020, 1027 (Pa. Super. 2015).

---

[7] The Superior Court in *Gregg* considered whether the holding in *Guy v. Liederbach*, 459 A.2d 744 (Pa. 1983), allowing a named legatee to sue the testator's lawyer for breach of contract where her legacy failed due to the lawyer's legal mistake, should be expanded to allow recovery where, *inter alia*, the new draft will naming the claimant was never executed. *Gregg*, 649 A.2d at 938. The *Gregg* panel concluded *Guy* "created a right of recovery on the theory of a third party beneficiary contract in a narrow class of cases in which it was clear that an innocent party had been injured by legal malpractice in the execution of an otherwise valid will." *Id.* at 937. We discuss *Guy* in more detail *infra*.

The Superior Court considered Ross's deposition testimony that he believed he "made a mistake by not presenting the 2010 Trust Amendment for Mr. Agnew's signature at the September [2010] meeting," and further admitting this was an "oversight." 110 A.3d at 1028, *citing* Deposition of Ross, 10/3/2013 at 25, 30. The Superior Court acknowledged Ross also stated, "I can't say for certain he would have signed it," *id., citing* Deposition of Ross, 10/3/2013 at 30, but the panel focused on the fact Ross had been Agnew's lawyer for seven years prior to his drafting the 2010 Trust Amendment, and observed this ongoing relationship distinguished this case from *Gregg*, where the lawyer had never met the testator before drafting a will for him at, essentially, his deathbed. *Estate of Agnew*, 110 A.3d at 1027 n.8.[8] The Superior Court noted *Gregg* was not precedential, noting the opinion was authored by one judge on a three-judge panel, and garnered only CIR votes from the other two panel members. *Id.* at 1026 n.6.

The Superior Court further held the trial court erred in failing to apply a certain footnote from *Guy v. Liederbach*, 459 A.2d 744 (Pa. 1983). In *Guy*, four justices (a majority of those participating) joined the holding that plaintiff Frances Guy, expressly named as an heir in an executed will, stated a cause of action for breach of contract against the lawyer who drafted the will, where the signed will was later held to be invalid because Guy herself witnessed the testator's signature, at the lawyer's direction, and in violation of then-applicable New Jersey law.[9] The Court adopted Restatement (Second)

---

[8] Contrary to the Superior Court's recitation of the *Gregg* facts, drafting attorney Lindsay had a prior attorney-client relationship with the testator, Arthur Blain. Lindsay drafted a will for Blain in 1979 naming Phyllis Murphy as the sole beneficiary and executrix. In 1983, while hospitalized, Blain directed Gregg to contact Lindsay and have him draft a new will making a substantial bequest to Gregg, and naming him executor. *Gregg*, 649 A.2d at 936.

[9] Former Chief Justice O'Brien did not participate. Justices Roberts and McDermott filed dissenting opinions and would not have allowed recovery on a breach of contract theory. A majority of the participating justices also rejected the plaintiff's separate (continued…)

of Contracts §302 in determining Guy had standing to make such a claim as an intended third-party beneficiary of the contract for legal services between the testator and his lawyer.[10]  *Id.* at 757.  The Court utilized the Section 302 analysis to devise the following two-part test for determining whether a person is an intended third-party beneficiary of a contract between others, such that the third party may enforce the contract:

> (1) the recognition of the beneficiary's right must be "appropriate to effectuate the intention of the parties," and
>
> (2) the performance must "satisfy an obligation of the promisee to pay money to the beneficiary" or "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance."

*Guy*, 459 A.2d at 751.  The Court stated the first part of the test sets forth a standing requirement, which restricts application of the second part of the test, "which defines the intended beneficiary as either a creditor beneficiary (§ 302(1)(a)) or a donee beneficiary (§ 302(1)(b))."  *Id.*  The Court applied this test to hold a third party to a legal services

---

(…continued)
claims for legal malpractice under a trespass (or tort) theory of recovery.  *Guy*, 459 A.2d at 753.

[10] Section 302 entitled Intended and Incidental Beneficiaries provides:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
>
>> (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
>>
>> (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
>
> (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

Restatement (Second) of Contracts §302.

contract has standing to bring an action against the testator's lawyer to enforce a failed legacy where "the intent to benefit [the third party] is clear and the promisee (testator) is unable to enforce the contract." *Id.* at 747. The Court thereby expressly overruled the prior case law requiring privity in such cases. *Id.* at 751, *citing Spires v. Hanover Fire Ins. Co.*, 70 A.2d 828 (Pa. 1950) (only where parties to contract express intention that third party is to be beneficiary of their contract may third party have standing to enforce the contract).

According to *Guy*, in order for a plaintiff to have standing as a third-party beneficiary to the contract of others, her "right to performance must be 'appropriate to effectuate the intentions of the parties,'" and the "standing requirement leaves discretion with the trial court to determine whether recognition of third-party beneficiary status would be 'appropriate.'" *Id.* at 751. The Court further made clear the relevant underlying contract (on which the plaintiff is suing), "is that between the testator and the attorney for the drafting of a will. The will, providing for one or more named beneficiaries, clearly manifests the intent of the testator to benefit the legatee. … Since only named beneficiaries can bring suit, they meet the first step standing requirement of §302." *Id.* In *Guy*, the will naming Guy was signed by the testator, and therefore, the Court concluded allowing her to enforce the contract between Guy and his lawyer would "effectuate the intentions of the parties." *Id.* at 751, *quoting* Section 302.

*Guy* includes a footnote on which the Superior Court relied to create a cause of action for appellees here. The footnote refers to "non-named beneficiaries," and as Guy was expressly identified in the will at issue in that case, the footnote clearly is *dicta*:

> There are, of course, beneficiaries under a will who are not named, and who may be either intended or unintended beneficiaries. The standing requirement may or may not be met by non-named but intended beneficiaries: the trial court must determine whether it would be "appropriate" and whether the circumstances indicate an intent to benefit non-named beneficiaries. It follows that unintended third party

> beneficiaries could not bring suit under § 302 against the drafting attorney. In making that determination the trial court should be certain the intent [of the contracting parties] is clear.

*Id.* at 752 n. 8. Ultimately, the Court concluded Guy was entitled to pursue her claim against the drafting attorney because she was named in an executed will which was made invalid only through the drafting attorney's clear error regarding the applicable law relating to witnesses. The will was not made invalid on the basis it was never signed by the testator. The Court specifically held "persons who are named beneficiaries under a will and who lose their intended legacy due to the failure of an attorney to properly draft the instrument should not be left without recourse or remedy[.]" *Id.* at 752.

In this case, the Superior Court determined *Guy*, and particularly footnote 8, directed that appellees have standing to sue appellants, and remanded for further proceedings. The court opined the record "supports an inference that Ross intended to give [a]ppellants the benefit of his contract with Mr. Agnew." 110 A.3d at 1028. The court concluded the trial court should have recognized appellees held a "right to performance" of the contract between Agnew and Ross because such right was "appropriate to effectuate the intention of the parties." *Id.*

Appellants filed a petition for allowance of appeal, and we granted allocatur to consider: 1) whether the Superior Court erred, and failed to apply "clear precedent," in holding "an executed testamentary document naming a third party as a beneficiary was not a prerequisite for that third party to have standing to bring a legal malpractice action based on breach of contract" against the testator's attorney; and 2) whether the Superior Court erred when it determined evidence of the intent of the testator's attorney alone was sufficient to establish an issue of fact to defeat summary judgment on the

issue of a third party's standing to pursue a legal malpractice breach of contract action against a testator's attorney. *Estate of Agnew v. Ross*, 122 A.3d 1030 (Pa. 2015).[11]

Appellants first argue the Superior Court's decision to allow appellees' lawsuit against them to proceed conflicts with the narrow exception to strict privity this Court created in *Guy*, as well as the Superior Court's own earlier decisions in *Gregg*, *supra*, *Hess v. Fox Rothschild, LLP*, 925 A.2d 798 (Pa. Super. 2007) (declining to extend narrow class of third-party beneficiaries identified in *Guy* to legatees of residuary trust who claimed their intended legacy was diminished by attorney's drafting error), and *Cardenas v. Schober*, 783 A.2d 317 (Pa. Super. 2001) (would-be legatees could not

---

[11] Appellants phrased their three questions on appeal as follows:

1. Whether the Superior Court erred when it determined, in a published decision, contrary to *Guy v. Liederbach*, 501 Pa. 47, 459 A.2d 744 (1983), as well as reported Superior Court decisions, *Gregg v. Lindsay*, 437 Pa. Super. 206, 649 A.2d 935 (1994), *Cardenas v. Schober*, 2001 Pa. Super. 253, 783 A.2d 317 (2001) and *Hess v. Fox Rothschild*, 2007 Pa. Super. 133, 925 A.2d 798 (Pa. Super. 2007), an executed testamentary document naming a third party as a beneficiary was not a prerequisite for that third party to have standing to bring a legal malpractice action based on breach of contract as third party intended beneficiary of contract against the testator's attorney?

2. Whether the Superior Court so far departed from accepted judicial practices or abused its discretion in failing to apply the clear precedent of *Guy v. Liederbach*, as well as other reported Superior Court decisions, *Gregg v. Lindsay*, *Cardenas v. Schober* and *Hess v. Fox Rothschild*, when it determined an executed testamentary document naming a third party as a beneficiary was not a prerequisite for that third party to have standing to bring a legal malpractice action based on breach of contract as third party intended beneficiary of contract against the testator's attorney?

3. Whether the Superior Court erred when it determined, in a published decision, evidence of the intent of the promisor (the testator's attorney) alone was sufficient to establish an issue of fact to defeat summary judgment on the issue of a third party's standing to pursue a legal malpractice breach of contract action against a testator's attorney?

*Estate of Agnew*, 122 A.3d 1030. In their briefs to this Court, the parties briefed Questions 1 and 2 as a single issue, and we consider them as such in this opinion.

recover from executor because they were not named legatees in decedent's will and handwritten documents purporting to bequeath money and property to them did not constitute otherwise valid will). Appellants note in *Guy*, this Court looked to the provisions of an **executed** will to determine the testator's intent to benefit Guy and to conclude Guy was an intended third-party beneficiary of the contract between the testator and his lawyer. Appellants assert that allowing a party to maintain an action for legal malpractice against a testator's lawyer in the absence of an executed testamentary document identifying that party as a beneficiary would undermine the integrity of properly executed wills, enhance the risk of misinterpretation of the testator's intent, undermine an attorney's undivided loyalty to his client and encourage fraudulent claims. Furthermore, appellants argue, if the Superior Court's published decision is allowed to stand, attorneys could be liable to pay bequests a testator never intended to make. Appellants observe Pennsylvania does not allow the use of extrinsic evidence to show the testamentary intent of the testator was other than reflected in the executed testamentary document because to allow the use of extrinsic evidence to prove such a claim would open the door to fraud, result in the defeat of the testator's intention, as well as nullify the provisions of the Probate Code which require testamentary documents to be in writing and signed by the testator. Appellants' Brief at 28, *citing In re Beisgen's Estate*, 128 A.2d 52, 55 (Pa. 1956) (testator's intent must be determined from face of the will and extrinsic evidence cannot be used as evidence of testator's intent independent of the written words employed); *In re Umberger's Estate*, 87 A.2d 290, 293 (Pa. 1952) ("It is not satisfactory procedure to accept parol testimony to explain unambiguous language in a will."); *In re Penrose's Estate*, 176 A. 738, 739 (Pa. 1935) (testimony is not admissible to alter or add to the terms of a will).

Appellants also argue an attorney owes no obligation to potential heirs to have testamentary documents executed promptly, or at all, and cites cases from other jurisdictions to support its position. Appellants' Brief at 30-31, *citing Gregg; Linth v. Gay*, 360 P.3d 844, 848-49 (Wash. App. 2015) (trustor's attorney did not owe duty to trust beneficiary to properly execute trust documents because of concerns about compromising attorney's loyalty to client); *Parks v. Fink*, 293 P.3d 1275, 1287 (Wash. App. 2013) (attorney owes no duty to prospective will beneficiary to have will executed promptly; risk of interfering with attorney's duty of undivided loyalty to client exceeds risk of harm to prospective beneficiary); *Sisson v. Jankowski*, 809 A.2d 1265, 1269-70 (N.H. 2002) (attorney did not owe duty to testator's brother, as prospective beneficiary, to ensure testator executed his will promptly); *Radovich v. Lock-Paddon*, 41 Cal. Rptr. 2d 573, 584 (Cal. Ct. App. 1995) (attorney owed no duty to potential beneficiary where testator had will in her possession for two months prior to death and did not execute it); *Krawczyk v. Stingle*, 543 A.2d 733, 736 (Conn. 1988) (attorney not liable to third parties for alleged negligent delay in execution of estate planning document).

Appellants further contend the rule disallowing a malpractice action without a valid testamentary document naming the alleged heir-plaintiff is consistent with Pennsylvania law requiring proof of actual loss. Appellants' Brief at 31-32, *citing, Myers v. Seigle*, 751 A.2d 1182, 1185 (Pa. Super. 2000) (summary judgment in favor of lawyers appropriate where legal malpractice plaintiff could not establish actual loss or identify design or manufacturing defect due to lawyers' disposal of vehicle involved in accident). Appellants argue a showing of actual loss in this case requires proof Agnew would have executed the 2010 Trust Amendment naming appellees, absent a breach by appellants, and appellants claim appellees cannot possibly produce such proof. Appellants note there is no presumption under the law a decedent who requested

changes to his estate plan would have executed those amendments. According to appellants, whether Agnew would have signed the 2010 Trust Amendment at some future time if he lived longer is mere speculation, which is insufficient to establish the existence of an actual loss and, in the absence of an executed testamentary document, appellees cannot establish they sustained actual loss due to the conduct of appellants.

Appellants further assert the trial court properly found appellees could not establish Agnew's intention to benefit them with the residue of the Revocable Trust because of the lack of an executed trust amendment naming appellees as beneficiaries. According to appellants, the fact the 2010 Trust Amendment was never signed distinguishes this case from *Guy*, where the will naming the plaintiff was signed by the testator. Appellants contend *Gregg, Cardenas*, and *Hess* all demonstrate a testator's intent to benefit a third party must be determined from the text of an **executed** testamentary document. Appellants' Brief at 33, 38-39 *citing Cardenas*, 783 A.2d at 323-24; *Hess*, 925 A.2d at 808-09; *Gregg,* 649 A.2d at 937. Appellants argue appellees have failed to establish a required element of their claim because they are unable to show Agnew intended to benefit them when he did not sign the 2010 Trust Amendment, while signing other documents.

Moreover, appellants claim the Superior Court's interpretation of and reliance on footnote 8 in *Guy* is erroneous; the footnote does not actually address whether an individual named in an unexecuted testamentary document can establish third-party intended beneficiary status, which is the precise issue in this appeal. Instead, the footnote discusses "beneficiaries under a will who are not named," and leaves open the question of whether such "non-named" beneficiaries may be either intended or unintended beneficiaries. *Guy*, 459 A.2d at 752 n.8. According to appellants, the text of the footnote reflects this Court's intent to require that an individual must be a

"beneficiary" under a testamentary document to maintain a cause of action against the testator's attorney and a person named in an **unexecuted** testamentary document is not a beneficiary. Appellants posit the term "non-named" beneficiaries refers to persons who are not specifically named, but are otherwise generally identifiable such as "my wife's children" or "my grandchildren." Therefore, because the 2010 Trust Amendment was never executed, appellants argue appellees were never beneficiaries, named or unnamed, of Agnew's Revocable Trust, and cannot rely on that document to claim standing to sue Ross for a breach of his contract with Agnew.

Appellants also argue the Superior Court completely failed to consider the policy reasons or rationale for requiring the testator's intent to benefit a third party to be affirmatively expressed in an executed testamentary document. Appellants contend the panel's decision improperly allows consideration of evidence extrinsic to the testator's executed testamentary documents to prove an intent by the testator contrary to the actual executed documents. Appellants assert that, under this framework, it is conceivable any disgruntled beneficiary or potential beneficiary can mount an indirect attack on a validly executed will through the filing of a legal malpractice action using extrinsic evidence that would not be admissible in a will contest to establish a testator's intent. Additionally, if left undisturbed, the Superior Court's published decision will force attorneys to pressure clients to promptly execute testamentary documents to avoid being sued by potential beneficiaries if the testator fails to execute the documents prior to death, for whatever reason. Appellants argue such concerns will impinge upon the attorney's duty of undivided loyalty to the testator as client.

Appellees maintain the Superior Court did not err for several reasons. First, appellees argue third-party beneficiary standing is not limited to factual circumstances which are similar to *Guy*. Appellees' Brief at 11-13, *citing, e.g., Scarpitti v. Weborg*, 609

A.2d 147 (Pa. 1992) (home owners had standing under Section 302 as third-party beneficiaries to contract between developer and architect, where developer hired architect to enforce deed restrictions in planned community, and architect failed to enforce restrictions uniformly). Appellees also distinguish this case from others where third-party beneficiary status was denied. *Id.* at 13-14, *citing Burks v. Fed. Ins. Co*, 883 A.2d 1086 (Pa. Super. 2005) (bank's insurance company not required to pay medical bills of bank customer, who slipped and fell on bank premises, because at the time bank and insurance company entered insurance contract neither party intended customer to be beneficiary of contract or be protected by contract); *Drummond v. Univ. of Pa.,* 651 A.2d 572 (Pa. Cmwlth. 1994) (prospective scholarship recipient did not have standing under agreement between university and city because only city reserved the right to enforcement). Appellees contend a non-contracting party should have standing to enforce the contract as a third-party beneficiary where "the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intentions of the parties." Appellees' Brief at 11, *quoting Scarpitti*, 609 A.2d at 150. Appellees posit "compelling" circumstances occur where the party who claims standing will be the one who primarily benefits from the promisor's (in this case, the attorney's) performance and has the greatest interest in enforcement of the contract, where the promisee (in this case, the testator) is no longer an interested party.

Appellees also dispute *Guy* required that they be named in an "otherwise valid" document, as stated by the trial court, in order to establish them as third-party beneficiaries of the contract between Ross and Agnew, and allow them to sue Ross. *See* Trial Court Opinion at 7. Appellees note the phrase "otherwise valid" testamentary document first appears in *Gregg*, and *Gregg* is distinguishable because there was no evidence a contract even existed between the testator and the attorney there; even if a

contract existed, there was no evidence of breach. Appellees' Brief at 17. Thus, according to appellees, the absence of an executed will in *Gregg* was not the fatal flaw to Gregg's claim; it was the absence of evidence of the testator's intent, which appellees claim is available here. Further, appellees assert reliance upon *Cardenas* is misplaced because the panel misappropriated language from *Gregg* to establish the "otherwise valid" standard. Appellees contend *Cardenas* failed to give adequate consideration to the additional reasoning supplied by *Gregg*, *i.e.*, the absence of evidence the attorney breached the terms of any contract. Appellees state appellants' reliance on *Hess* is also misplaced because the panel refused to recognize the plaintiffs' standing as third-party beneficiaries even though the plaintiffs were named as the recipients of the decedent's residuary trust, which was established by the decedent's will. Accordingly, appellees reason their standing to sue the testator's lawyer should not be premised on signed documents but should instead be determined according to the particular circumstances of this case.

Next, appellees reject appellants' argument that public policy concerns militate in favor of requiring an executed testamentary document naming alleged third-party beneficiaries before they may be allowed to recover on the contract between a testator and his lawyer. Appellees observe *Guy* rejected similar policy-based arguments against the abandonment of the *Spires* strict privity requirement when adopting Section 302, concluding the Section 302 analysis would provide enough protection from illegitimate third-party actions. Further, appellees deny they are indirectly contesting Agnew's estate plan under the guise of a contract claim. Rather, appellees maintain they are innocent parties injured by legal malpractice in the execution of an otherwise valid testamentary document — the 2010 Trust Amendment — as part of a comprehensive estate plan. Appellees argue the evidence to support their claim should not be limited

to the face of the executed testamentary documents because such a limitation does not reflect the testator's true intent. Appellees' Brief at 28, *citing Jones v. Wilt*, 871 A.2d 210, 214 (Pa. Super. 2005) (permitting named legatee of validly executed will to use drafting attorney's deposition testimony to prove attorney acted negligently or breached his contractual duty to provide legal service to decedent under third-party beneficiary theory). Appellees assert, unlike other jurisdictions, Pennsylvania courts permit consideration of extrinsic evidence to determine the testator's intent to benefit a third party. *Guy*, 459 A.2d at 752 (intent of testator shown by his arrangements with attorney and text of will); *Jones* 871 A.2d at 214 (permitting use of drafting attorney's deposition testimony to prove malpractice claim). Appellees argue Pennsylvania's approach is further elucidated by the *Guy* Court's willingness to recognize claims of third parties who, though not specifically named in a will, can show that they were nonetheless intended "non-named beneficiaries." Appellees' Brief at 27, *citing Guy*, 459 A.2d at 752 n.8. Appellees reject appellants' reliance upon cases from other jurisdictions such as *Radovich* and *Sisson* on the basis they involved tort concepts rather than contract principles, the latter of which underlie legal malpractice claims in Pennsylvania. *See Guy*, 459 A.2d at 753 (intended third-party beneficiary may bring legal malpractice claim against testator's attorney on breach of contract theory only).

Finally, appellees argue recognition of their right to performance of Agnew's contract with appellants is appropriate because they are innocent parties injured by legal malpractice in the execution of an otherwise valid testamentary document. But for appellants' breach, argue appellees, Agnew would have signed the 2010 Trust Amendment. Appellees assert there is evidence of a contract for legal services, *i.e.*, for the drafting of amendments to an estate plan, evidence of Agnew's intent the amendments benefit the appellees, and an absence of evidence Agnew consented to

allowing the 2010 Trust Amendment to remain unsigned, or had no intention of signing the Trust Amendment.

We consider the parties' arguments in light of the proper standard of review. In this case, the trial court granted summary judgment in favor of appellants and dismissed appellees' attempt to recover for breach of the contract between Agnew and his lawyers. Summary judgment is appropriate where the record clearly demonstrates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Atcovitz v. Gulph Mills Tennis Club, Inc.,* 812 A.2d 1218, 1221 (Pa. 2002); Pa. R.C.P. No. 1035.2(1). When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party. *Toy*, 928 A.2d at 195. Whether there are no genuine issues as to any material fact presents a question of law, and therefore, our standard of review is *de novo* and our scope of review plenary. *Weaver v. Lancaster Newspapers, Inc.,* 926 A.2d 899, 902-03 (Pa. 2007).

Our review reveals the Superior Court erred in reversing the trial court's grant of summary judgment. We agree with appellants that the fact appellees were named as beneficiaries in the **unexecuted** 2010 Trust Amendment does not provide them with standing to recover on a contract claim against appellants. Stated another way, we hold an **executed** testamentary document naming an individual as a legatee is a prerequisite to that individual's ability to enforce the contract between the testator and the attorney he hired to draft that particular testamentary document. *See, e.g., Guy, supra* (plaintiff had standing to sue testator's lawyer for mistake in drafting will, where she was named legatee in that will). Although appellees are named heirs in Agnew's 2010 Will, they recovered their legacy under that will and we do not consider that document as dispositive of appellees' right to sue Ross for any breach related to the Revocable Trust

and its amendments. In our view, the dispositive testamentary documents in this claim for breach of contract related to the drafting and execution of the 2010 Trust Amendment, are the 2007 Trust Amendment in which appellees are not named, and the **unexecuted** 2010 Trust Amendment in which they are named.

To the extent appellees — and the Superior Court — consider *Guy* to direct the opposite result, their reliance is misplaced because *Guy* is distinguishable on its facts. Moreover, careful application of the test outlined in *Guy* actually supports the trial court's decision to dismiss appellants' claims. The Court described a two-part test for analyzing the rights and obligations of the alleged third-party beneficiary and the testator's lawyer. In order to determine whether an individual is an "intended third-party beneficiary" with standing to sue a lawyer based on his contract with the testator the court must first find "the recognition of the beneficiary's right must be 'appropriate to effectuate the intention of the parties.'" *Guy*, 459 A.2d at 751, *quoting* Restatement (Second) of Contracts §302. The Court further held "persons who are named beneficiaries under a will and who lose their intended legacy due to the failure of an attorney to properly draft the instrument should not be left without recourse or remedy[.]" *Id.* at 752. In *Guy*, the plaintiff — expressly named in a will, which was executed by the testator, but invalidated only due to the attorney's mistake of law — clearly lost an "intended legacy" due to the lawyer's failure. Recognition of Guy's right to recover against the attorney in that case was therefore "appropriate to effectuate the intention of the parties," which clearly was to provide a bequest to Guy. However, application of these precepts to the facts in this case does not support the Superior Court's conclusion that appellees have standing to sue appellants on the contract between Ross and Agnew. Unlike plaintiff Guy, who achieved standing based on an executed will in which

she was expressly identified, appellees seek to recover for breach of contract based on their being named in a document the testator never signed.

Moreover, the Superior Court's reliance upon the "non-named beneficiaries" *dicta* in *Guy*'s footnote 8 to conclude appellees satisfied the Restatement Section 302 test was error. Having reviewed case law from Pennsylvania and other jurisdictions, we conclude the term "non-named beneficiaries" as used in that footnote refers to persons who are given a bequest but are generally identified in a manner other than by name, such as "my children" or "my heirs" or persons or entities to be identified after the testator's death, and therefore appellees are not "non-named beneficiaries" of the Revocable Trust. *See, e.g., In re Reinheimer's Estate*, 108 A. 412 (Pa. 1919) ("[I]t is not essentially necessary that a testator, in his will, name the legatee or devisee in order to give effect to the bequest. It is sufficient if he is so described therein as to be ascertained and identified."); *Fabian v. Lindsay*, 765 S.E.2d 132, 141 (S.C. 2014) (limiting standing under third-party beneficiary theory to persons named in the estate planning document or otherwise identified in the instrument by their status, *e.g.*, "my children and grandchildren, my wife's children"); *In re Estate of Serrill*, 159 So.2d 246 (Fla. Dist. Ct. App. 1964) (testatrix bequeathed $4000 each to "a Home for Boys" and "a Home for Crippled Children" to be designated by her executors); *Meriden Trust & Safe Deposit Co. v. Spencer*, 16 A.2d 349, 350 (Conn. 1940) (use of "child" or "children" could be used in testamentary documents to designate unnamed beneficiaries); *Moss v. Axford*, 224 N.W. 425, 427 (Mich. 1929) (testatrix devised residue to executor with directions to pay residue to "person who has given me the best care in my declining years and who in his opinion is the most worthy of my said property").[12]

---

[12]In fact, Agnew's 2010 Will contains "non-named beneficiaries" of this kind. In the clause titled "Tangible Personal Property," Agnew willed his personal property to "such of my friends and family as my Executor, in her discretion, chooses." These potential
(continued…)

We now specifically consider whether appellees' being named in the **unexecuted** 2010 Trust Amendment is relevant to determine whether they should have standing to sue appellants as third-party beneficiaries of the contract between Agnew and Ross. The Superior Court determined that such evidence was appropriate to establish the testator's intent to benefit them, as described under the first prong of the Restatement Section 302 test. We note the Probate Code provides a trust is created only if "the settlor signs a writing that indicates an intention to create the trust and contains provisions of the trust." 20 Pa.C.S. §7732(a)(2). Likewise, the Probate Code requires every will must be in writing and signed by the testator at the end of the will. 20 Pa.C.S. §2502. Accordingly, a testamentary instrument which is not signed, as required by statute, cannot be given effect. *In re Sciutti's Estate*, 92 A.2d 188, 189 (Pa. 1952) ("an unsigned document in the *form* of a will cannot be probated as a will. A will in order to be valid must be signed.") (emphasis in original). In *Brown's Estate*, 32 A.2d 22 (Pa. 1943), this Court explained a will must be signed in order to be valid because: "(1) [I]t shall appear from the face of the instrument itself that the testator's intent was consummated and that the instrument was complete and (2) to prevent fraudulent or unauthorized alterations or additions to the will." *Id.* at 23. Principles applicable to construction of a trust are essentially the same as those used in will construction. *In re Tracy*, 346 A.2d 750, 752 (Pa. 1975).

---

(…continued)
heirs are easily distinguishable from appellees, who are expressly identified, in an unexecuted draft document. We reject appellees' argument that the term "non-named beneficiaries" as used in *Guy*'s footnote 8 refers to persons completely omitted from an executed testamentary document — as appellees were completely omitted from the executed 2007 Trust Amendment here — such that they might sue the testator's lawyer for breach of contract. Will at 3, Exhibit M to Motion for Summary Judgment.

The Probate Code prescribes two methods by which a trust may be revoked or amended. Section 7752(c) provides, in relevant part:

(c) How to revoke or amend. — The settlor may revoke or amend a revocable trust only:

(1) by substantial compliance with a method provided in the trust instrument; or

(2) if the trust instrument does not provide a method or the method provided in the trust instrument is not expressly made exclusive, by a later writing, other than a will or codicil, that is signed by the settlor and expressly refers to the trust or specifically conveys property that would otherwise have passed according to the trust instrument.

20 Pa.C.S. §7752(c). In this case, the executed 2007 Trust Amendment expressly provides "I reserve the right from time to time, by an instrument in writing delivered to Trustee, to revoke or amend, either in whole or in part, this Agreement," and thus requires a writing to effectuate amendment of its terms. 2007 Trust Amendment at 5, Exhibit E to Motion for Summary Judgment. Ross drafted an "instrument in writing" purporting to change the terms of the 2007 Amendment, but in light of other Probate Code provisions and relevant case law requiring that testamentary instruments be signed to be valid, the unexecuted 2010 Trust Amendment probably would not be enforceable in an estate challenge.[13] The question is whether the draft's existence is proper evidence of the testator's intent in an independent litigation arising out of an alleged breach of contract, in light of *Guy* and its Section 302 test standing test.

---

[13] In fact, it is likely that in an action to reform the Revocable Trust to reflect the provisions of the unexecuted 2010 Trust Amendment pursuant to Section 7740.5 of the Probate Code, appellees would not succeed. *See* 20 Pa.C.S. §7740.5 (claimants attempting to reform unexecuted trust document must present clear and convincing evidence "the settlor's intent as expressed in the trust instrument was affected by a mistake of fact or law, whether in expression or inducement").

The first part of the Section 302 test requires a court to determine whether the grant of standing would be "appropriate to effectuate the intentions of the parties." The best evidence of a testator's intent is the testamentary document itself and the testator's arrangements with his attorney. *Guy*, 459 A.2d at 752; *In re Hirsh's Estate*, 5 A.2d 160, 163 (Pa. 1939) ("The 'pole star' long fixed for the guidance of courts in interpreting deeds of trust, as in interpreting wills, is the intention of the maker."); *Wallize v. Wallize*, 55 Pa. 242, 248 (1867) (evidence of intent of devisor should be derived from writing signed by him, otherwise innumerable cases would arise where evidence of mistake would be claimed and proved). Additionally, when construing a will, "[t]he intention of [a] testator … must be determined from what appears upon the face of the will. Extrinsic evidence of surrounding facts must only relate to the meaning of ambiguous words of the will. It cannot be received as evidence of testator's intention independent of the written words employed." *In re Beisgen's Estate*, 128 A.2d at 55; *see also Tracy*, 346 A.2d at 752 (principles applicable to trust construction are essentially same as those used in will construction and intent of settlor must prevail).

The parties' arguments exemplify the problems associated with attempting to discern intent beyond the four corners of executed testamentary documents. For example, appellants argue there is no evidence to indicate Agnew wished to sign the 2010 Trust Amendment, while appellees argue there is no evidence to indicate Agnew did not wish to sign the document. The execution requirement and the bar on extrinsic evidence act precisely to prevent courts from speculating regarding a testator's intent under such circumstances, when that intent is properly reflected only in an executed testamentary document. In *Guy*, for example, the testator signed his will, thus clearly expressing his intent to benefit Guy. Guy was deprived of her legacy not because the will was never finalized and executed for unknown and unknowable reasons, but

because the testator's attorney misunderstood applicable law and directed her to sign the will as a subscribing witness, thus invalidating the testator's fully-expressed bequest. 459 A.2d at 752.

We are persuaded public policy considerations weigh against allowing a party to use an unexecuted testamentary document to establish standing to sue the testator's lawyer for breach of contract as a third-party beneficiary under Restatement Section 302. In adopting Section 302, the *Guy* Court recognized the potential consequences of relaxing the strict privity requirement, such as a possible reduction in the quality of legal services rendered to clients due to attorneys' increased concern over liability to third parties. *Guy*, 459 A.2d at 752. As a result, the Court did not eliminate the privity requirement for a negligence action, specifically stating third-party beneficiary standing should be narrowly tailored. *Id.* at 746, 751, 752 (observing "a properly restricted cause of action for third party beneficiaries in accord with the principles of [Section 302] is available to named legatees;" Section 302 "provides an analysis of third party beneficiaries which permits a properly restricted cause of action;" "the class of persons to whom the defendant may be liable is restricted by principles of contract law;" and "cases such as [Guy's] who is a third party beneficiary, sound in [contract], and involve considerations more restrictive than [tort].")." Moreover, *Guy* repeatedly referred to "**named** legatees" and "**named** beneficiaries" when describing potential claimants in a breach of contract action. 459 A.2d at 746, 749, 751, 752 (emphasis added). The reasons for doing so remain compelling, and may be even more compelling given advances in technology which freely enable duplication, manipulation and reproduction of documents and pieces of documents. Requiring an alleged heir to point to an **executed** testamentary document — expressly identifying him — before he may sue the testator's lawyer for breach of a contract to which he was not a party serves to

protect the integrity and solemnity of the testator's bequests from fraudulent claims. Correspondingly, such a requirement lessens the chance a testator's attorney will be required to pay a bequest the testator never intended to make in the first place.

Moreover, *Scarpitti*, where a breach of contract action brought by third-party beneficiaries was allowed, is easily distinguishable. In *Scarpitti*, the developer hired an architect to enforce the architectural standards contained in the development's recorded subdivision deed restrictions. 609 A.2d at 148. This Court held owners of property in the development — not parties to the contract between architect and developer — could nevertheless bring a claim against the architect for failure to enforce the deed restrictions uniformly. The Court concluded the property owners were intended third-party beneficiaries of the contract between the developer and the architect because the very purpose of that agreement was to ensure compliance with certain standards within their own development, and thus the owners clearly were intended to benefit from the establishment of a vehicle to enforce those standards. 609 A.2d at 151. The Court held the claimant-owners reasonably relied "upon the promise [between developer and architect] as manifesting an intention to confer a right on them." *Id.* The *Scarpitti* claimants, who relied upon recorded deed restrictions and a promise to uniformly enforce those restrictions, are readily distinguishable from appellees; there is no reasonable basis for appellees to rely upon appellants' agreement to draft parts of Agnew's estate plan, where that legal agreement could have involved any number of possible testamentary permutations or potential beneficiaries, and ultimately required execution by the testator to validate those drafts. A testator may change an estate plan at any time, adding and subtracting legatees, increasing and decreasing bequests. Under such mercurial circumstances, we decline to confer standing to purported heirs to prosecute a breach of contract action against the testator's attorney on the basis the

attorney failed to ensure the testator signed the particular document making a potential bequest.[14]

We recognize that Agnew apparently verbally expressed, in 2010, a desire to benefit his late wife's family more and to leave less to charity. Ross drafted the 2010 Will which provided substantial bequests to various family members, including appellees. Ross also drafted the 2010 Trust Amendment which provided appellees would receive the residue of the trust after all legacies provided for in the 2010 Will, and the five college scholarships, were funded. Agnew signed the 2010 Will, but did not sign the 2010 Trust Amendment, for reasons ultimately unknown and unknowable. It is possible Agnew decided the bequests in his revised Will sufficiently benefitted appellees and the 2010 Trust Amendment was unnecessary. Or, Agnew could have forgotten about the 2010 Trust Amendment or mistakenly believed he had signed the document. Under such circumstances, we are unconvinced allowing would-be legatees to use extrinsic evidence to establish third-party beneficiary standing to bring a legal malpractice action is consistent with the public policy considerations discussed above.[15]

Notwithstanding these compelling considerations, appellees insist the Superior Court correctly concluded evidence of Ross's intent was sufficient to establish an issue of fact to defeat summary judgment. *Estate of Agnew*, 110 A.3d at 1028 (appellees satisfied standing requirement because "the record supports an inference that Ross intended to give [appellees] the benefit of his contract with Mr. Agnew"). Appellees

---

[14] As such, our discussion here does not alter the Section 302 third-party beneficiary analysis to be applied in the general commercial context, but rather explicates why relief is not available in the particular circumstances presented in this appeal, namely, the interface between Section 302 and the requirements of the Probate Code with respect to testamentary documents.

[15] We do not address the use of extrinsic evidence to prove a testator's intent in other contexts.

contend the intentions of both Ross and Agnew are relevant, and the record supports inferences that Ross intended to give appellees the benefit of his contract with Agnew, and also forgot to ensure Agnew signed the 2010 Trust Amendment. Deposition of Ross, 10/3/2013 at 30, Exhibit J to Motion for Summary Judgment.

Appellants assert only the testator's intent is material to determining third-party beneficiary status, and so, whether or not appellees were the intended beneficiaries of appellants' legal services is dependent upon Agnew's — not Ross's — intent. Thus, an executed testamentary document expressing the intent of Agnew to benefit appellees specifically (rather than merely intending to contract with Ross to develop an estate plan generally) is necessary to establish appellees have standing to sue Ross. Appellants therefore contend the Superior Court improperly considered whether Ross, rather than Agnew, intended to give appellees the benefit of the legal services contract, and the panel further erred when it concluded there exists an issue of material fact regarding intent that may be elucidated by Ross's testimony about his alleged mistake.

We hold Agnew's intent, as reflected in the **executed** testamentary documents, is paramount, and extrinsic evidence may not be considered in undermining that expressed purpose. The client has the ultimate authority to determine the purpose and scope of an attorney's representation. Pa.R.P.C. 1.2. An attorney cannot engage in any representation that is in conflict with representation of the client, because "[l]oyalty and independent judgment are essential elements in the lawyer's relationship to a client." Pa.R.P.C. 1.7; *Maritrans GP, Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d 1277, 1283 (Pa. 1992) (attorney owes fiduciary duty to client; such duty demands undivided loyalty and prohibits attorney from engaging in conflicts of interest). It follows from these general precepts that a testator's purpose in engaging an attorney to draft an estate plan is to benefit (or not) certain persons upon his death. An attorney is

obligated to draft documents which carry out the testator's plan regardless of the effects or consequences to any potential beneficiaries. To the extent the attorney has drafted testamentary documents, which have been fully executed by the testator, such documents are conclusive evidence the testator intended to benefit the named beneficiaries, and we hold individuals who are named only in **unexecuted**, consequently invalid documents — such as appellees with respect to the 2010 Trust Amendment — may not claim status as third-party beneficiaries of the legal contract between the testator and his attorney, and may not achieve a legacy through alternate means, such as a breach of contract action. The trial court correctly determined appellees' claims fail as a matter of law, and the Superior Court erred in reversing that determination.

Accordingly, the order of the Superior Court is reversed, and the matter is remanded for reinstatement of the trial court's order granting summary judgment in favor of appellants.[16]

Justices Baer, Todd, Donohue and Wecht join the opinion.

Chief Justice Saylor files a concurring opinion.

---

[16] Following oral argument in this matter, appellants filed an application for leave to file supplemental submission in order to provide the Court with additional authority from other jurisdictions decided post-briefing, which appellants believed were germane to issues before the Court. The application is hereby granted.